FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 DEC 23  PM 3: 35

Heather Kendall Miller
NATIVE AMERICAN RIGHTS FUND
420 L Street, Suite 505
Anchorage, Alaska 99501
Tel: (907) 276-0680
Fax (907) 276-2466

Attorney for Intervenors

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL,<br>ALASKA CHAPTER OF SAFARI CLUB<br>INTERNATIONAL, *et al.*,<br><br>           Plaintiffs,<br><br>   v.<br><br>MITCH DEMIENTIEFF, Chairman,<br>FEDERAL SUBSISTENCE BOARD, *et al.*<br>          Defendants,<br><br>   and<br><br>NATIVE VILLAGE OF VENETIE TRIBAL<br>GOVERNMENT, *et. al.*,<br><br>          Intervenors. | Case No. A98-0414 CV (HRH)<br><br>**INTERVENORS' JOINT REPLY TO<br>PLAINTIFFS' AND DEFENDANTS'<br>OPPOSITION TO INTERVENORS'<br>MEMORANDUM IN SUPPORT OF<br>INTERVENORS' AMENDED<br>CROSS-CLAIM** |

## **INTRODUCTION**

Intervenors' amended cross-claim seeks a determination that the Regional Advisory

Council membership rule is contrary to Title VIII of the Alaska National Interest Lands

Conservation Act ("ANILCA" or "Title VIII") and FACA, not reasonably related to carrying out

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

Title VIII's purpose or FACA's "fair balance" requirement, and otherwise arbitrary, capricious, unreasonable and an abuse of discretion.

Defendants and Plaintiffs both argue that Intervenors are bound by the law of the case including the decisions that Regional Advisory Councils are subject to FACA, Order on Motion for Summary Judgment (Dkt. No. 208) at 52-54, that a council comprised of only subsistence users is not fairly balanced, *id.* at 57, and that non-subsistence users of fish and game have a point of view that must be taken into account in the makeup of the Regional Advisory Councils. *Id* at 58.

Intervenors do not disagree. At the Court's invitation, Intervenors here "take up the battle where it stopped: with the requirement that the Secretaries engage in formal rule-making." Order on Motion for Leave to Amend (Dkt. No. 244). But critically, this Court in its prior ruling "t[ook] no position as to whether the 70/30 division of membership on Regional Advisory Councils will or will not comport with the requirements of FACA and ANILCA." *Id.* at 7-8. Intervenors now address that issue, together with other aspects of the final rule that were not previously before the Court.

As demonstrated in our opening brief, the agency implemented the 70/30 policy – <u>even while the agency was under a court imposed injunction against doing so</u> until the rule-change had first undergone the proper notice and comment rule-making. In the Order on Motions for Summary Judgment, this Court admonished the agency that a general rule of qualification for membership on Regional Advisory Councils must comport with ANILCA's basic membership requirement as well as the functions that the councils are to perform. Order at 59-60 (Jan. 16,

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

-2-

2004) (Dkt. No. 208). In addition, a membership rule must comport with FACA's fairly balanced requirement. *Id.* Continuing its cavalier approach to rule-making, the agency has now adopted and implemented a final rule that is contrary to ANILCA and FACA, not reasonably related to carrying out Title VIII's purpose or FACA's "fair balance" requirement, and is otherwise arbitrary, capricious, unreasonable and an abuse of discretion.

## ARGUMENT

### I.    STANDARD OF REVIEW

Defendants and Plaintiffs argue that the Regional Advisory Council membership rule is subject to judicial deference. Gov. Br. at 7-10; Pltf. Br. at 48. They are mistaken. Just as Intervenors are bound by the law of the case, so too are Defendants. The Court determined in the prior proceeding that "no deference is to be afforded to the Secretaries for their interpretation of FACA, as they do not administer FACA." Order on Motion for Summary Judgment (Dkt. No. 208) at 29 (emphasis added). The notice of proposed rule-making stated:

> The underlying purpose of the proposed change to § __.11(b), while complying with the District Court's order, is to ensure continued compliance with both the fairly balanced representational requirements of FACA and the requirements and purposes of Title VIII of ANILCA in the appointments to the Regional Councils.

69 Federal Register 19964-68 (April 15, 2004). The rule-change constitutes the agency's interpretation of "the fairly balanced representational requirements of FACA" and is therefore entitled to no judicial deference under the law of the case.

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

-3-

II.    **THE AGENCY'S ADOPTION OF A QUOTA FOR SINGLE-INTEREST REPRESENTATION ON THE RACS IS NOT REASONABLY BASED IN ANILCA AND CONSTITUTES AN ABUSE OF DISCRETION**

The final rule on advisory council membership "establishes representational goals" of 70 percent of the members of the councils to represent subsistence interests and 30 percent of the councils to represent commercial and sport interests. 69 Fed. Reg. 60962. In its purported attempt to meet the representational goal, the agency requires that applicants for membership designate a single interest of representation, <u>either</u> subsistence or sport/commercial.

Defendants contend that the designation of single-interest representation violates neither ANILCA or FACA because nothing in the regulation requires any member to exclusively represent his or her designated interest. Gov. Br. at 19. This assertion is belied by the language of the regulation which states, "The portion of membership that represents the commercial and sport interests shall include, where possible, at least one representative from the sport community and one representative from the commercial community," 50 C.F.R. § 100.11 (b)(1); and the fact that the agency itself is interpreting the regulation as requiring members to represent a single interest. *See*, Federal Subsistence Regional Advisory Council Membership Application Nomination Packet, question No. 10 at p.7, "Regional Council seats are designated for both subsistence use and commercial/sport use representatives. You (or nominee) must choose one or the other. (check ONE only!)" (Exhibit 1); *see also*, statement by RAC member Virgil Umphenour: "[W]hen I had to fill out my application [for renewal to the Council], I had to list which user group I represented, whether it was commercial, sport or subsistence or which seat I

*Safari Club v. Demientieff*                    Joint Reply to Defs' and Plffs' Opp. to
No. A98-0414-CV (HRH) (D. Alaska)              Intervenors' Mem in Support of Intervenors'
                                               Amended Cross-Claim

wanted to be reappointed in and so I put down that I did all three and then they sent it back and said I could only put down one thing.[1]

Plaintiffs, too, view the regulation as requiring single-interest representation: "It is true that, under the 70/30 membership balancing plan, each RAC member is selected to represent a particular group of resource users." Pltf. Br. at 31. Elsewhere in their brief Plaintiffs argue at length that "Federal Defendants properly refused to adopt a plan in which RAC members would represent multiple interests," and elaborate on the necessity of single interest representation as required by the final rule:

> To *represent* a user group, the individual must 'serve as the official and authorized delegate or agent' for the group and/or must 'act as a spokesperson for' that group. American Heritage Dictionary of the English Language, (4th Ed. 2000). Black's Law Dictionary, the term 'represent' is defined as follows:
>> To appear in the character of; personate; to exhibit; to expose before the eyes. To represent a thing is to produce it publicly. To represent a person is to stand in his place; to speak or act with authority on behalf of such person; to supply his place; to act as his substitute or agent.
>
> Black's Law Dictionary 1169 (5th ed. 1979).
> . . . .
>  Those appointed to represent non-subsistence users have an obligation to speak for the group they represent.

Pltf. Br. at 41-42.

While Intervenors agree that under the law of the case non-subsistence users of fish and game have a point of view that must be taken into account in the makeup of the Regional Advisory Councils, the final rule's quota of single-interest representation of non-subsistence

---

[1] Vol. 2, Tab 11, pg. 1433 of Adm. Record (attachment 2 to Interv. Opening Br.).

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)                                    Joint Reply to Defs' and Plffs' Opp. to
                                                                      Intervenors' Mem in Support of Intervenors'
                                                                      Amended Cross-Claim
                                          -5-

consumptive uses goes much further than providing a platform for the expression of such views. It creates interest group affiliation where none belongs and reflects the agency's "transparent purpose [] to protect commercial and sport [] interests." *Kenaitze Indian Tribe v. State of Alaska*, 860 F.2d 312, 318 (9th Cir. 1984). The Ninth Circuit has expressly cautioned against "'tak[ing] away what Congress has given,' to rural Alaskans by interpreting ANILCA to 'protect commercial and sport fishing interests.'" *Native Village of Quinhagak v. United States*, 35 F.3d 388, 394 (9th Cir. 1994), quoting *Kenaitze*, 860 F.2d at 318.

This Court must assess the single-interest RAC membership rule bearing in mind ANILCA's purpose "of enabling rural residents who have personal knowledge of local conditions and requirements to have a meaningful role in the management of fish and wildlife and of subsistence uses on the public lands in Alaska." 16 U.S.C. § 3111(5). To carry out this purpose, Section 805 assures that residents engaged in a subsistence lifestyle will have a meaningful role in the management of fish and wildlife and of subsistence uses on the public lands in Alaska. 16 U.S.C. § 3115; *see also, Kunaknana v. Clark*, 742 F.2d 1145, 1150 (9th Cir. 1984) ("In order to assure the continuation of subsistence lifestyles, Congress indicated that residents so engaged should play a part in the administrative structure."). Section 805 details various duties and authority "in matters relating to subsistence uses." Nothing in Section 805 suggests a Congressional intent that RAC seats be allocated based on a quota for single-interest representation of non-subsistence consumptive uses. *See* 16 U.S.C. § 3115 (3). If Congress believed it important to quantify and regiment viewpoints on the RACs based on interest group affiliation, it would have so stated. *See* 2A Sutherland Statutory Construction § 47.25.234

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

(1992) (in interpreting statutes, it is generally inferred that omissions are intentional); *see also,*

*Bates v. United States*, 522 U.S. 23, 29 (1997) ("it is generally presumed that Congress acts

intentionally and purposely in the disparate inclusion or exclusion of [statutory language]").

    The single-interest RAC membership rule must also be assessed against the two

membership requirements of (1) residence in the region[2] and (2) knowledge of the region and

subsistence uses of the public lands.[3]  The latter regulatory requirement was adopted in 1992

after extensive public hearings on the issue of RAC composition.  In the Record of Decision, the

agency stated:

> The dominant concern expressed by subsistence users during the public comment
> period was their desire to be involved in decisions affecting their subsistence
> lifestyle.  They wish to participate in the decision making process at the highest
> level possible.  <u>The Regional Advisory Council system required by ANILCA
> Section 805 was created to provide subsistence users the opportunity to
> participate effectively in the management and regulation of subsistence resources
> on federal public lands</u>.  The Board in its recommendations to the Secretary,
> places great emphasis on developing an advisory system that enables people with
> personal knowledge of local conditions and requirements to have a meaningful
> role in managing subsistence.
> . . . .
> The numbers of members on each Council will be determined by the Board and
> will vary from region to region depending on the number and distribution of
> subsistence users in the region, the variety of subsistence resources, and the
> nature and extent of management issues.  To the extent possible, the size of the
> Council and distribution of membership within the region will be designated to
> ensure maximum participation in the Federal program by local subsistence users.

Subsistence Management for Federal Public Lands in Alaska, Record of Decision at 10, 16, 1992

(emphasis added) (attached hereto as Exhibit 2).  The regulatory requirement for council

---

[2]  16 U.S.C. § 3115 (a) (3).

[3]  50 C.F.R. § 100.11(b) (1).

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

membership, and the record supporting it, are conspicuously silent regarding a quota for single-interest representation of non-subsistence consumptive uses.

This Court must further assess the single-interest membership rule juxtaposed against the powers and duties of the regional councils, some of which are taken directly from Section 3115.[4] There is nothing in the powers and duties of the regional councils that pertains to commercial and sport interests. It bears repeating that Defendants in the earlier briefing acknowledged that the "[d]uties of the Regional Advisory Councils, are all related to the 'subsistence uses' of fish and wildlife resources. The Councils are given no duties with respect to sport or commercial uses of fish and wildlife." Gov. Br. at 113-114, *Safari Club 1* (Dkt. No. 171) (emphasis added).

Given the lack of congressional intent or language in ANILCA supporting a quota of single-interest representation of non-subsistence consumptive uses on the RACs, it stands to reason that the agency's promulgation of such a rule is contrary to law. Rather, advisory council membership should be based on user experience.[5] Under the law of this case, such experience may include subsistence, sport and commercial interests. But sport and commercial interests cannot be singled out and allotted quota seats for the exclusive representation of such interests on the RACs where the duties and functions of the RACs all pertain to subsistence uses of fish and wildlife resources. To do so fundamentally alters the duties and functions of the RACs in

---

[4]   RAC powers, duties and functions are set forth in this Court's Order on Motions for Summary Judgment at 14-16 (Jan. 16, 2004) (Dkt. No. 208).

[5]   FACA's implementing regulations emphasize "personal qualifications and experience relevant to the functions and tasks to be performed" as a measure for achieving fair balance. 41 C.F.R. Parts 102-3 and 102-3.60.

*Safari Club v. Demientieff*                           Joint Reply to Defs' and Plffs' Opp. to
No. A98-0414-CV (HRH) (D. Alaska)              Intervenors' Mem in Support of Intervenors'
                                                                  Amended Cross-Claim
-8-

violation of ANILCA. Indeed, if the rule remains in place, discussions between RAC members will no longer focus strictly on information relevant to subsistence uses (as Congress intended), but on pitched battles between competing user groups as to whether subsistence should be protected at all, particularly when such protection impacts the hunting opportunities of other user groups. By adopting a quota of single-interest representation of non-subsistence consumptive uses on the RACs, the agency has taken the political conflict between user groups that Congress resolved in Title VIII, and both resurrected and enshrined it into the agency decision-making process. This is antithetical to Title VIII. Congress never intended that the RACs would function as a battle-ground for political discourse on subsistence rights. The agency's decision to adopt a quota system of single-interest representation on the RACs is not reasonably based in ANILCA and is thus contrary to law and an abuse of discretion.

III.    **THE AGENCY'S ADOPTION OF A QUOTA FOR SINGLE-INTEREST REPRESENTATION ON THE RACS IS NOT REASONABLY BASED IN FACA AND CONSTITUTES AN ABUSE OF DISCRETION**

Citing *Cargill, Inc. v. United States*, 173 F.3d 323, 336 (D.C. Cir. 1989), Defendants defend the final membership rule on the basis that the agency has considerable discretion under FACA to determine what constitutes fairly balanced councils. Gov. Br. at 22, 25. But as this Court has already held, "no deference is to be afforded to the Secretaries for their interpretation of FACA, as they do not administer FACA." Order on Motion for Summary Judgment (Dkt. No. 208) at 29.

This Court thus reviews the issue presented de novo, and "'[i]n considering whether a committee is fairly balanced in terms of function, courts naturally have looked first at the

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

-9-



functions to be performed.'" Order at 55, quoting *Cargill*, 173 F.3d at 336. In the prior

proceeding Defendants themselves emphasized that the specific functions of the RACs are to

provide specialized knowledge about subsistence and do not include the advocacy of non-

subsistence use allocations. Gov. Br. at 113-114, *Safari Club 1* (Dkt. No.171). In a 180 degree

about face from that position, Defendants now insist that the final rule's quota for "membership

of persons representing sport and commercial users is clearly proper." Gov. Br. at 23. Not so.

As illustrated above, the agency's regulation goes far beyond creating a forum for sport and

commercial users to share their views on matters related to subsistence, and instead creates a

quota for single-interest representation. Thus, the final membership rule does not seek to

balance views but to reduce "points of view to a few categories – as if they were political

categories." *Public Citizen v. National Advisory Comm, on Microbiological Criteria for Foods*,

886 F.2d 419 (D.C. Cir. 1989) (Silberman, J, dissenting).

    Plaintiffs, as can be expected, enthusiastically embrace the final rule, insisting that fair

balance is achieved by having designated seats to "represent the point and counterpoint of the

councils' functions." Pltf. Br. at 27. *Id.*   Under that theory, RAC functions are reduced to a

point/counterpoint construct by a simple syllogism: every RAC decision on any matter relating

to subsistence is one that necessarily deprives sport and commercial users of their access to fish

and wildlife. Therefore, the logic goes, "fair balance" requires that representational seats be

allocated to sport and commercial users to assure that those interests are adequately represented.

*Id*. at 28-28. Plaintiffs' logic fails at least for two reasons.

*Safari Club v. Demientieff*                          Joint Reply to Defs' and Plffs' Opp. to
No. A98-0414-CV (HRH) (D. Alaska)        Intervenors' Mem in Support of Intervenors'
                                                                Amended Cross-Claim

-10-

First, in considering whether a committee is fairly balanced in terms of function, courts must look to the functions to be performed. Order on Motion for Summary Judgment (Dkt. No. 208) at 29, 55. RAC functions are explicit in that they all relate to <u>subsistence uses</u> of fish and wildlife. *See* 50 C.F.R. § 100.11(c) (1). The authorizing regulation does not express a concern for any "counterpoint" to subsistence uses. While RAC decisions may impact other uses, RAC functions are nonetheless confined to "matters relating to subsistence uses of fish and wildlife." Therefore, single-interest representation of non-subsistence consumptive uses finds no support in the functions of the RACs. *See, e.g.*, *National Treasury Employees Union v. Reagan*, 1988 WL 21700 (D.D.C. 1988) (unpublished decision) (attachment 15 to Interv. Opening Br.) ("The function of the Commission is clearly not to determine whether or not privatization in general is a good or desirable public policy. The question before us then is whether, within these parameters created by the President, critics of privatization must be present on the Commission to lend it balance."); *Public Citizen v. Nat'l Advisory Committee on Microbiological Criteria for Foods,* 886 F.2d 419, 423 (D.C. Cir. 1989) (per curium) (Friedman, J., concurring) ("Since the Committee's function in this case involves highly technical and scientific studies and recommendations, a 'fair balance' of viewpoints can be achieved even though the Committee does not have any members who are consumer advocates or proponents of consumer interests.").

Second, a fair balance of views is not achieved by the allocation of seats to competing interests. "Fair balance" is a measure of "<u>experience relevant to the functions and tasks to be performed</u>," not interest-group affiliation.[6] Thus, courts have uniformly rejected a competing

---

[6] See, 41 C.F.R. Parts 102-3 and 102-3.60 (emphasis added).

*Safari Club v. Demientieff* Joint Reply to Defs' and Plffs' Opp. to
No. A98-0414-CV (HRH) (D. Alaska) Intervenors' Mem in Support of Intervenors'
 Amended Cross-Claim
-11-

interest approach to fair balance. *See e.g., National Hunger Anti-Coalition v. Executive Committee of the President's Private Survey on Cost Control*, 711 F.2d 1071, 1074 (D.C. Cir.1983) (fair balance between competing views is irrelevant); *National Treasury Employees Union*, 1988 WL 21700, *supra* (Commission need not include a critic of privatization where the function of the Commission was primarily to study and report on which activities of the federal Defendants are more appropriately part of the private sector, rather than to determine whether privatization is a good policy.).

In *National Treasury,* union members challenged the membership composition of the President's Commission on Privatization on the basis that the Commission included no representatives of federal employees who have a direct interest in the recommendations of the Commission. The union claimed that once a group has established that it will be directly affected by the recommendations of a given commission, that group is entitled to membership. The court rejected the union's competing interest argument, holding:

> While [FACA] is designed to allow groups possessing a significant and direct interest in the purpose and work of the committee to have their views reflected, it is equally clear that in order for the committees to retain their effectiveness as research and advisory tools for policy development they must have a finite and somewhat limited membership. From the legislative history presented, <u>we do not find that Congress intended the 'fairly balanced' requirement to entitle every interested party or group affected to representation on the Commission. Such an interpretation would be untenable.</u> . . . Neither FACA, the legislative history nor *National Anti-Hunger*, *supra*, guarantees that person or groups will be able to choose Commission members. Thus [the union] and its members are not entitled as a matter of right to have a representative of their union sit on the committee.

1988 WL 21700 at * 3 (emphasis added).

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

-12-

The district court's decision in *National Anti-Hunger*, upon which Plaintiffs rely, is not to the contrary. In an earlier proceeding, the court rejected a fair balance challenge by individual recipients of food assistance benefits seeking membership on the President's Private Sector Survey on Cost Control, on the basis that the "function to be performed by the Private Sector Survey is narrow and explicit." 557 F. Supp. 524, 528 (DD.C. 1983) The district court later allowed plaintiffs to renew their challenge upon a showing that the Executive Committee made recommendations which did not primarily concern the Committee's cost control functions. (Rather, the recommendations addressed substantial issues of broad national policy that sought the repeal of specific statutory provisions which determined eligibility for concrete benefits under the federal Food Stamp Program.) 566 F. Supp. 1515, 1516 (D.D.C. 1983). The court found these recommendations substantive in character because they effected established statutory rights of individuals who were presently eligible for certain benefits, and thus concluded that the committee was unbalanced as to these substantive legislative policy issues. There is nothing comparable here in the role of the RACs as defined by Congress in Title VIII.

Plaintiffs liken sport and commercial users to the food stamp beneficiaries in *National Hunger Anti-Coalition* (Pltf. Br. at 29-30), but ignore the plain fact that sport and commercial users of fish and wildlife do not have any established statutory rights under Title VIII, nor are they eligible for any specific benefits or entitlements under Title VIII. The only beneficiaries of Title VIII are rural Alaska residents, and it is the <u>subsistence</u> uses of fish and wildlife that, alone, are protected by law. Congress already considered the political conflict between user groups, and Congress resolved them in favor of subsistence uses by enacting a subsistence priority for

*Safari Club v. Demientieff*                    Joint Reply to Defs' and Plffs' Opp. to
No. A98-0414-CV (HRH) (D. Alaska)            Intervenors' Mem in Support of Intervenors'
                                             Amended Cross-Claim
                                    -13-

rural residents.   The impact of RAC decisions on other consumptive uses is a consequence of

the priority that Congress has expressly sanctioned.   Since RAC decisions do not and cannot

constitute recommendations to change national policy or affect established statutory rights as

they pertain to competing uses, the situation presented here is entirely unlike *National Hunger*.

The RAC functions and duties are strictly to carry out Congress' specific directive that residents

engaged in subsistence uses shall have a "meaningful role in the management of fish and wildlife

and of subsistence uses on the public lands in Alaska." 16 U.S.C. § 3111(5).

Noticeably absent from Plaintiffs' discussion is any contention that Congress in FACA

intended to permit the kind of interest-group affiliation to membership that is championed here.

This is understandable, for quite to the contrary, Congress in FACA intended to prevent single-

interest representation on Federal Advisory Councils.   As the House Report accompanying

FACA noted:

> One of the great dangers in the unregulated use of advisory committees *is that*
> *special interest groups may use their membership on such bodies to promote their*
> *private concerns.*  Testimony received at hearings before the Legal and Monetary
> Affairs Subcommittee pointed out the danger of allowing special interest groups
> to exercise undue influence upon the Defendants through the dominance of
> advisory committees which deal with matters in which they have vested interests.

H.R. REP. NO. 1017, 92d Cong., 2d Sess. 6 (1972), *reprinted in* 1972 U.S. CODE CONG. &

ADMIN. NEWS 3491, 3496 (emphasis added).   Accordingly, Congress provided specific

guidelines to agency heads in Section 5(b)(3) which read in full:

> (B) Any such legislation [establishing an advisory committee] shall . . . (3)
> contain appropriate provisions to assure that the advice and recommendations of
> the advisory committee will not be inappropriately influenced by the appointing
> authority *or by any special interest*, but will instead be the result of the advisory
> committee's independent judgment[.]

*Safari Club v. Demientieff*                                Joint Reply to Defs' and Plffs' Opp. to
No. A98-0414-CV (HRH) (D. Alaska)              Intervenors' Mem in Support of Intervenors'
                                                                        Amended Cross-Claim

-14-

5 U.S.C. App. 2 § 5(3) (emphasis added). FACA's requirement that committees exercise

independent judgment free from improper influence is contrary to the agency's purported

attempt to create a "fair balance" of views on the RACs by establishing mandatory quota seats

for members who would represent a single-interest group.

The agency's adoption of a quota for single-interest representation on the RACs is not

reasonably related to FACA, contrary to law, and constitutes an abuse of discretion.

## III.    THE AGENCY FAILED TO PUT THE PROPOSED RULE BEFORE THE REGIONAL COUNCILS FOR THEIR REVIEW AND RECOMMENDATION.

There can be no serious dispute that a change in the regional membership regulation has

taken place. The Court elaborated upon the significance in the agency's change in the

membership rule when it stated:

> The 70/30 "rule" is not an interpretive rule. It is a legislative rule because it
> represents a significant departure from the established policy that only subsistence
> users could be members of the regional advisory councils. The 70/30 "rule" goes
> far beyond an agency interpretation of the requirements of ANILCA and FACA.
> It represents a drastic departure form existing policy and effectively amends the
> prior legislative rules (50 C.F.R.§ 100.11 (b)) dealing with the structure and
> membership composition of the regional advisory councils. When the regulations
> relating to the structure of the regional advisory councils were first promulgated,
> there was no membership quota imposed on the councils. Imposing a
> membership quota amends those prior legislative rules. Defendants cannot
> implement the 70/30 "rule", for it was not adopted in accordance with the
> requirements of 5 U.S.C. § 553.

Order on Motions for Summary Judgment, Jan 16, 2004 (Dkt. No. 208). Any change in a

regulation must conform with the procedural requirements of the APA and with the substantive

requirements of ANILCA. As demonstrated in our opening brief at pages 30- 37, the agency

violated Section 805 of ANILCA by failing to put the proposed rule before the existing RACs

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

-15-

for their review and recommendation. Section 805(a)(3) of ANILCA specifically states that each Council "shall have the following authority: (A) the review and evaluation of proposals for regulations, policies, management plans, and other matters relating to subsistence uses of fish and wildlife within the region" (emphasis added). Despite this statutory mandate, Defendants and Plaintiffs insist that the regulatory change in regional council membership was not a regulation that was required to go before the RACs. Gov. Br. at 11; Pltfs. Br. at 32-33. In essence Defendants continue to assert (as they did in the prior litigation) that the change in regional council membership regulation rests within the sole discretion of the Secretaries, and thus, the reasoning goes, the Secretaries need not comply with Section 805's mandate that each RAC review and evaluate proposals for "regulations, policies, management plans and other matters relating to subsistence uses of fish and wildlife." This Court rejected a similar argument in the earlier litigation, holding that the regulation change was not within the Secretaries' sole discretion since they must also follow the substantive standards of ANILCA and FACA: "ANILCA and FACA provide meaningful substantive standards for assessing the propriety of agency actions concerning regional advisory membership." Order on Motions for Summary Judgment, Jan 16, 2004 (Dkt. No. 208). The substantive standards of ANILCA likewise require that the agency put the rule before the RACs.

There is nothing to support Defendants' contention that rules concerning Council composition, as they relate to FACA's fair balance requirement, fall outside the scope of Section

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

-16-

805(a)(3).[7] Again, Defendants' prior litigation position acknowledged that "FACA does not operate to limit Section 805(c). Instead Section 805 limits FACA." Gov. Br. At 44, *Safari Club 1* (Dkt. No.171). Defendants now equivocate that their prior statements were only meant to address Plaintiffs' argument that the RACs must be limited by FACA to only an advisory role. Gov. Br. at 14. But Defendants cannot so easily escape their previous concession by now suggesting that FACA trumps ANILCA for certain purposes but not for others. Section 9(a) of FACA contains this specific qualification: "Unless otherwise specifically provided by statute.'" FACA's qualification applies with equal force to Section 805(a)(3) of ANILCA, which specifically authorizes the RACs to review and make recommendations on "regulations, policies,

---

[7]    The agency's Regional Council Operations Manual does not distinguish between rules that are subject to RAC review:

> **[Question] 3: What roles do the Regional Councils play in the regulations review process?**
> Regional Councils have a key role throughout the regulations cycle. Not only can Regional Councils propose changes to the regulations, they also review all proposals and supporting analyses and make recommendations on the proposals to the Federal Subsistence Board. In addition, the Regional Councils provide a forum for local people to express their views.

The Federal Subsistence Management Program Regional Advisory Council Operations Manual at 3, (2003) (emphasis added) (attached as Exhibit 3). Again,

> **[Question] 8: Do the Regional Councils review and make recommendations on *all* the proposals affecting their region?**
> Yes. In the weeks before the fall or winter Regional Councils meeting, you will receive a meeting booklet that includes the staff analysis and any public comments for proposals affecting your region. You should read and review the proposals and the draft staff analyses as thoroughly as you can before the meeting. During the meeting, the Council develops a recommendation for each proposal.

*Id.* at 16.

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

-17-

management plans, and other matters relating to subsistence uses of fish and wildlife." 16

U.S.C. § 3115(a)(3).

As demonstrated in our opening brief at pages 34-36, the agency's own regulation

governing the powers and duties of the Regional Advisory Councils broadly encompass

recommendations "on the establishment and membership of Federal Advisory Committees." 50

C.F.R. § 100.11. Defendants and Plaintiffs attempt to minimize the broad authority vested in the

RACs by unconvincingly countering that recommendations for the establishment and

membership of Federal Advisory Committees are not the same as those for the establishment and

membership of Regional Advisory Councils. Pltf. Br. at 33, ft. nt. 3. The point is irrelevant.

The fact that the RACs have been delegated broad authority to make recommendations on

membership of any committee that deals with subsistence management issues directly

contradicts Plaintiffs' contention that RAC recommendations are limited to those concerning the

taking of fish and wildlife on the public lands. Clearly they are not.[8]

---

[8]  The agency's Regional Council Operations Manual also states:

> **[Question] 1 Why do the Councils meet?**
> The Regional Councils provide information and recommendations on subsistence to
> the Federal Subsistence Board. The Councils meet to discuss and review proposed
> changes to subsistence regulations *and to discuss other aspects of subsistence
> management, such as Subsistence Resource Commission appointments and Regional
> Council Charters.* An important function of Regional Council meetings to provide
> a place and time for members of the public to discuss subsistence issues and
> concerns for the Councils to bring to the Federal Subsistence Board for action. At
> any time during the year, Regional Councils may be asked to evaluate and make
> recommendations to the Board on subsistence-related policies, management plans
> and other matters relating to subsistence take of fish and wildlife on Federal public
> lands. These types of requests occur on an as-needed basis.

*Safari Club v. Demientieff*                                     Joint Reply to Defs' and Plffs' Opp. to
No. A98-0414-CV (HRH) (D. Alaska)                    Intervenors' Mem in Support of Intervenors'
                                                                           Amended Cross-Claim

Alternatively, Defendants argue that even if there was no obligation to provide the RACs an opportunity to comment, they had full opportunity to do so because during their spring meetings they were each briefed on the Court's Order of January 16, 2004. Gov. Br. at 15; Pltf. Br. at 34. They were also told that they could provide comment on the 70/30 concept at that time – <u>before an actual rule was published</u> – or later afer the publication of the rule, <u>as individuals</u>, during the public comment period. The critical point which they attempt to downplay is the fact, amply supported in the record,[9] that the RACs were denied the opportunity to review the rule-change and make recommendations <u>as formal bodies</u>.[10] Thus, the so-called "opportunity" to comment fell short of the review required by Section 805.

---

The Federal Subsistence Management Program Regional Advisory Council Operations Manual at 26, (2003) (attached as Exhibit 3).

[9] *See, e.g.*, Vol. 2, Tab 11, pg. 1321-1432 of Adm. record; Vol. 8, Tab 66, pg. 7998 of Adm. record; 69 Fed. Reg. 60957 (October 14, 2004); Vol. 10, Tab 82, pg. 10515 of Adm. record (Agency response acknowledging that the comment period did not coincide with the regular Regional Council meeting cycle.).

[10] Defendants weekly argue that given the court's direction that they act "promptly," a 45-day comment period was sufficient to give all persons, including the RACs, a fair opportunity to comment on the proposal. Gov. Br. at 17. Forty-five days would certainly have been sufficient time for comment if in fact the agency had published the final rule to coincide with the spring and winter RAC meetings. But the agency did not. As explained in Intervenors' opening brief at pages 30 -34, the agency had 36 days from the date of this Court's 1/16/04 Order to the first RAC spring meeting (which convened February 19, 2004), with the remainder of the RAC meetings running through March 19, 2004. Rather than publish the proposed rule during this time the agency chose instead to wait until <u>after</u> the RACs met and then filed a notice of proposed rule-making April 15, 2005. The agency then scheduled publication of the final rule to take place before the RAC winter meetings. Thus, the agency failed to start the APA process "promptly," contrary to this Court's order, and then turned its action to eliminate the RAC's from any meaningful role.

*Safari Club v. Demientieff*                                    Joint Reply to Defs' and Plffs' Opp. to
No. A98-0414-CV (HRH) (D. Alaska)                Intervenors' Mem in Support of Intervenors'
                                                                          Amended Cross-Claim

Pursuant to Section 805(c), the Secretaries "shall consider the report and recommendations of" the Regional Advisory Council. As the Government stressed in its previous briefing, the RACs are more than just advisory bodies. "[T]he ordinary language of Section 805(c) mandates that the Secretaries '<u>shall consider</u> the reports and recommendations' of the Regional Advisory Councils." Gov. Br. at 46, 48, *Safari Club 1* (Dkt. No. 171) (emphasis added). "Further, Section 805(c) limits the Secretaries' discretion 'not to follow' the recommendations of a Regional Advisory Council to the instances when the Secretaries find that one of the three statutory factors is present." *Id.* Indeed, Defendants were previously resolute that the word "shall" is ordinarily a directory or a mandatory term, *Id.* at 47, citing *City of Edmonds v. United States Department of Labor*, 749 F.2d 1419, 1421 (9th Cir. 1982). Now, Defendants try to change horses by urging upon the Court a reading of the statute that would reduce the RACs to mere advisory bodies. Nothing in the statute supports the contention that, in receiving RAC recommendations, the Secretary has discretion to decide that some ANILCA rule-changes will be subject to RAC review while other will not. In fact, Congress' use of the word "shall" left the Secretary with no discretion whatsoever. The agency's "drastic departure from existing policy [which] effectively amends the prior legislative rules (50 C.F.R.§ 100.11 (b)) dealing with the structure and membership composition of the regional advisory councils,"Order on Motions for Summary Judgment, Jan 16, 2004 (Dkt. No.208), is a rule-change that must be placed before the RACs for their review and recommendation consistent with Section 805(c) of ANILCA.

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

-20-

Defendants' current litigation position is little more than a thinly-veiled attempt to avoid Secretarial deference to the recommendations of the RACs, as specified under Section 805(c). It is for this reason that Defendants urge a construction of Section 805(c) as limiting Secretarial discretion to those recommendations concerning the taking of fish and wildlife on the public lands. Gov. Br. at 12; Pltfs. Br. at 48-49. But Section 805(c) by its terms is not so limited. Rules of statutory construction require courts to "to first engage in a textual analysis of the relevant statutory provisions and to read the words of a statute 'in their context and with a view to their place in the overall statutory scheme.'" *Wilderness Society v. United States Fish and Wildlife Service*, 316 F.3d 913, 932 (2003) (quoting *Rucker v. Davis*, 237 F.3d 1113, 1119 (9th Cir. 2001) (en banc), overruled on other grounds by *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S.125 (2002). Thus, courts will read a statute "'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous.'" *Id.* (quoting *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991). As demonstrated in our opening brief at pages 36-37, the regulations implementing Title VIII's requirements, like the statute, also require that RAC members be residents "of the region in which he or she is appointed" and "be knowledgeable about the region and subsistence uses of the public lands therein." 50 C.F.R. § 100.11(b) (1). Therefore, any rule that concerns the advisory council composition necessarily encompasses matters "concerning the taking of fish and wildlife on the public lands within their respective regions for subsistence uses" under Section 805 (c).

## IV.    THE AGENCY'S ADOPTION OF A QUOTA SYSTEM OF SINGLE-INTEREST REPRESENTATION IS ARBITRARY AND CAPRICIOUS

*Safari Club v. Demientieff*                                          Joint Reply to Defs' and Plffs' Opp. to
No. A98-0414-CV (HRH) (D. Alaska)                     Intervenors' Mem in Support of Intervenors'
                                                                           Amended Cross-Claim
-21-

1.    **The Agency Failed to Consider a Cross-Section of Those
Directly Affected, Interested, and Qualified, as Appropriate to
the Nature and Functions of the Advisory Committee**.

The agency failed to consider a cross-section of interests that are required for a fairly

balanced membership.  As demonstrated in our opening brief at pages 38-40, the agency's

inquiry into "fair balance" should have begun with an examination of the functions to be

performed by the RACs.  The agency's inquiry should have proceeded to consider a cross-

section of those directly affected, interested, and qualified, as appropriate to the nature and

functions of the advisory committee.   But the record is devoid of any evidence showing that the

agency engaged in a considered analysis of what constitutes "fair balance" under FACA as it

applies to ANILCA's RACs, or that it bothered to consider a cross-section of those directly

affected, other than sport or commercial interests.  The record reflects that the agency simply

lifted the 70/30 quota from the defunct Stevens Amendments: "The 70/30 came from a statutory

provision, a temporary statutory provision constructed by Ted Stevens."[11]  Even while it was

under a court-imposed injunction to refrain from implementing the 70/30 quota until notice and

comment, the agency marched forward  to revise the RAC charters to reflect  the 70/30 policy

and assign seats pursuant to that policy.  In so doing, the agency failed to engage in reasoned

decision-making.  Consequently, the agency's action must be set aside.

2.    **The Agency Failed to Consider Whether a Fair Balance of
Views Could be Achieved by Alternatives to a Quota System of
Single Interest Representation**.

---

[11]   Statement by Solicitor Goltz, Vol. 6, Tab 39, pg. 5287 of Adm. Record.

*Safari Club v. Demientieff*                                Joint Reply to Defs' and Plffs' Opp. to
No. A98-0414-CV (HRH) (D. Alaska)              Intervenors' Mem in Support of Intervenors'
                                                                        Amended Cross-Claim

"Agency actions cannot be sustained where the agency has failed to consider significant alternatives." *Mt. Diablo Hospital v. Shalala*, 3 F.3d 1126, 1232 (9th Cir. 1993). As demonstrated in our opening brief at pages 40 - 46, the agency proceeded with rule-making on the single-interest 70/30 quota without first considering whether a "fair balance" of views could be achieved by other alternatives, including whether a "fair balance" of views has already been achieved by seating board members who are both subsistence users and sport hunters or commercial fishermen. Plaintiffs argue that Defendants considered alternatives to the single-interest representational quota. Pltf. Br. at 39.[12]  But to the contrary, the agency's response states:

> We recognize that there are and have been individuals serving on the Councils who may participate in many types of uses (subsistence, sport and commercial) and are knowledgeable about the different interests. However, we are required by FACA to demonstrate that the Regional Advisory Councils continue to be fairly balanced in terns of points of view represented and the functions to be performed by the Council. Consequently, we have requested that people applying for Council seats declare their primary interest because it is the individual applicant who is the most knowledgeable about his/her viewpoints.

69 Fed. Reg. 60957, 60959.[13]  What this agency's  response demonstrates is that, through circular reasoning, the agency interpreted FACA as <u>requiring</u> single-interest representation.

---

[12]  In arguing that the agency considered other alternatives, Plaintiffs offer exhibits pulled from the prior administrative record on the original 70/30 policy that was filed with the court: Administrative Record - Venetie Cross-Claim (Dkt. Nos. 157 & 158). The original 70/30 policy was found void by this court. Order on Summary Judgment (Dkt. No. 208). As Defendants correctly note, the prior record is not part of the administrative record for the Final Rule at issue now. Gov. Br. at 10 n. 8. The alternatives to the 70/30 policy that are in the prior administrative record do show, however, that there were other alternatives that could have, and should have been considered in adopting the single-interest Final Rule.

[13]  Vol. 10, Tab 82, at 010511, 010515 of Adm. Rec.

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

Starting from that premise, the agency discarded consideration of any other alternatives for achieving fair balance. As already shown, the agency's reliance on FACA is misplaced because that Act and case law interpreting it eschew a competing interest approach to fair balance.

Defendants, for their part, again retreat from their earlier litigation position that FACA does not require a 70/30 quota. Gov. Br. at 27. Putting aside Defendants' earlier litigation position that the prior RACs (whose composition was based wholly on user experience instead of interest group affiliation) were fairly balanced, Defendants offer no explanation for why the agency failed to consider significant alternatives to the 70/30 single-interest quota. But the record intent is clear. Based on its misinterpretation of FACA's fair balance requirements the agency dismissed consideration of any and all other significant alternatives. The agency's failure to consider other alternatives, and to explain why such alternatives were not chosen, was arbitrary and capricious, in violation of § 706(2)(A) of the APA. *Motor Vehicle Mfrs. Assn. v. State Farm Mut.*, 463 U.S. 29 at 48 (an agency's failure to "cogently explain why it has exercised its discretion in a given manner" renders its decision arbitrary and capricious.). As such, the agency's action cannot be sustained. *See International Ladies' Garment Workers' Union v. Donovan,* 722 F.2d 795 at 815-16 (D.C.Cir. 1983) (Agency failed to consider "substantial testimony" and "specific proposals" for alternative actions.).

**3.      The Agency's Action is Not Supported in the Findings**.

The agency failed to support its changes to RAC composition with substantial evidence or specific findings in the record. Although Plaintiffs in their Opposition make sweeping statements that the Administrative Record supports the single-interest representational rule, they

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)
-24-

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

do not offer <u>a single record site to the administrative record</u>.  See, Pltf. Br. at 43-44. This is understandable, for the record contains <u>no</u> evidence such as surveys, testimony, letters or reports which could be used as a basis for such findings.   Given the lack of any evidence to support the agency's adoption of the quota system of single-interest representation, the agency's decision is not supported by a rational basis and is therefore arbitrary and capricious.

### 4.    The Agency Relied On Factors That Congress Has Not Intended It To Consider.

In Intervenor's opening brief, we showed that by modeling the 70/30 quota system of the defunct Stevens Amendment the agency relied on factors which Congress has not intended it to consider.  Interv. Br. at 48-49.  Plaintiffs respond by offering the following convoluted, if inventive, argument: Under the Stevens Amendment the role of the RACs was modified from one of advising the Secretary to that of advising the State of Alaska; since FACA extends only to advisory committees that advise the federal government, the Stevens Amendment RACs would no longer be subject to FACA; absent FACA's application to the RACs, the drafters of the Stevens Amendment were aware that they could not guarantee fair balance on the RACs without specific quota designations.  Plaintiffs thus conclude that "[b]ecause the drafters of the Stevens Amendments were required to create their own FACA-like membership criteria for the new committees, those amendments portray a very accurate view of how Congress believed FACA was intended to work to balance the memberships of ANILCA's original RACs." Pltf. Br. at 47.

First, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Waterman S.S. Corp. v. United States*, 381 U.S. 252 (1965).  Similarly,

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

-25-

"unsuccessful attempts at legislation" are "not the best guides to legislative intent." *Red Lion Broadcasting Co. v. Federal Communications Commission*, 395 U.S. 367, 382 n. 11 (1969). Moreover, any evaluation of congressional intent requires that the initial focus be on the state of the law at the time the legislation was enacted and must take into account its contemporary legal context. *California v. Sierra Club*, 451 U.S. 287, 296, n. 7 (1981).

In adopting the Stevens Amendments Congress' intent was to offer a "carrot" to the State so that it would bring state law back into compliance with ANILCA. This carrot opened the door to special interest group representation on the RACs, to conciliate those legislators who desired substantial weakening amendments to Title VIII as the price for adopting a constitutional amendment. But Congress was resolutely clear on the condition that would be exacted for such weakening amendments. If the State failed to timely adopt a constitutional amendment, it was Congress' will that the Stevens Amendments would die. Any congressional intent to be discerned from the Stevens Amendments bears not on FACA but on Congress' intent that the changes go into effect *only if* the State fulfilled the statutory condition. By relying on the Stevens Amendment as a basis for changes to the composition of the RACs, the agency relied on factors which Congress has not intended it to consider.

### 5.    The Agency's Action Targeting Sport and Commercial Users over Other Nonconsumptive Users on the RACs was Arbitrary and Capricious.

The agency's decision to revise the composition of the RACs to include sport and commercial users while simultaneously excluding all other consumptive and non-consumptive users was arbitrary and capricious. Rather than being inclusive of individuals who are affected

*Safari Club v. Demientieff*
No. A98-0414-CV (HRH) (D. Alaska)

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim

by the management of fish and wildlife <u>for subsistence uses</u>, the agency's exclusive

representation quota system effectively shuts out all other people from RAC membership *unless*

they meet *new* criteria *not* found anywhere in the statute – interest group affiliation with sport

and commercial interests.  The agency's action amounts to an "artificial narrowing of options

[which] is antithetical to reasoned decision making . . ." *Mt. Diablo Hosp. v. Shalala*, 3 F.3d

1226, 1232-1233 (9th Cir. 1993).  "Given the possible range of points of view on virtually any

subject, an effort to reduce points of view to a few categories – as if they were political parties –

is quite artificial and arbitrary." *Public Citizen*, 886 F.2d at 427 ( Silberman, dissenting).

## CONCLUSION

Intervenors have shown that the agency's rulemaking is contrary to Title VIII of

ANILCA and FACA, not reasonably related to carrying out Title VIII's purpose or FACA's "fair

balance" requirement, and otherwise arbitrary, capricious, unreasonable and an abuse of

discretion.  Intervenors have also shown that the agency dodged its mandatory duty to place the

proposed rule before the RACs for their review and recommendation as directed by Section 805

of ANILCA.

Accordingly, the court should enter judgment in favor of Intervenors in their amended

cross-claim against the Federal Defendants.

DATED this 22 Day of December 2005

Respectfully submitted,

By: _____

Heather R. Kendall Miller

*Safari Club v. Demientieff*                   Joint Reply to Defs' and Plffs' Opp. to
No. A98-0414-CV (HRH) (D. Alaska)              Intervenors' Mem in Support of Intervenors'
                                              Amended Cross-Claim
                    -27-

Certificate of Service

The undersigned hereby certifies that on **December _2,3_, 2005,** a true and correct copy of the foregoing **INTERVENORS' JOINT REPLY TO PLAINTIFFS' AND DEFENDANTS' OPPOSITION TO INTERVENORS' MEMORANDUM IN SUPPORT OF INTERVENORS' AMENDED CROSS CLAIM** was sent via first class mail upon:

Dean Dunsmore
Department of Justice
801 B Street, Suite 504
Anchorage, AK   99501-3657

Brent Cole
MARSTON & COLE
745 West Fourth Avenue, Suite 502
Anchorage, AK 99501

Anna M. Seidman
2087 Kedge Drive
Vienna, VA 22181

_Anne Thomas_
Anne Thomas
Legal Administrative Assistant

Joint Reply to Defs' and Plffs' Opp. to
Intervenors' Mem in Support of Intervenors'
Amended Cross-Claim