# EXHIBIT "A"

draft of a report to the Federal Subsistence Board by a subcommittee on the composition of regional councils). Proposed changes to the Candidate Interview Form also included "knowledge of and experience with recreational, commercial and other uses in the region." *Id.*

The sub-committee also developed an "ALTERNATIVE REPORT TO THE FEDERAL SUBSISTENCE BOARD ON THE MATTER OF ADVISORY COUNCILS" that proposed detailed RAC changes mirroring the repealed Stevens Amendments. The Alternative Report stated in pertinent part:

> The subcommittee studied Title VIII of ANILCA together with the Federal Advisory Committee Act (FACA). And in doing so, it gave particular attention to the 1998 legislation (Stevens Amendments) that would have gone into effect had the State of Alaska added a subsistence amendment to its Constitution. With that legislation as its model, the subcommittee recommends ten 10-member councils consisting of: (a) seven qualified subsistence users, (b) two sport or commercial users, and (c) one urban user who would serve in a non-voting capacity in regions lacking an urban center.

The sub-committee also developed and considered "a revised version of the 'preferred option'" of the Report. The "preferred option" varied from the "Alternative option" in that the "scope" section did not explicitly state that the sub-committee's recommendations were based on the Stevens Amendments model. *Id.* at p.00091. Neither did the "preferred option" include quotas, nor specific goals for representation. Rather, greater emphasis was placed on changes to the Membership Application form, the Candidate Interview form, and the scoring procedures. *Id.*

The sub-committee approved the "preferred option" and sent it to the Board for a work session on April 22, 2002. The Board adopted the sub-committee's recommendations and on April 26, 2002, forwarded them to Deputy Secretary Griles. On June 17, 2002 Deputy Associate Solicitor Paul Smyth responded that the Draft had been reviewed but still had "some distance to go." Tab 14, 6/17/02 Smyth Letter, p. 00390-91. He stated his belief that subsistence users should fill only 70% of the chairs at any Council with the remaining 30% to be filled with representatives of commercial and sport interests, and he recommended that the sub-committee look to the repealed "Stevens Amendments" for direction, *Id.*

On July 8, 2002, the FSB sub-committee developed a "DISCUSSION PAPER ON COMPOSITION OF REGIONAL ADVISORY COUNCILS". The Discussion Paper referenced both the January 8, 2002 Griles letter and the June 17, 2002 Smyth letter suggesting the Board take a "close and careful look at the 'Stevens Amendments.'" After quoting the repealed Amendments' provisions concerning the composition of the RACs, the DISCUSSION PAPER suggested specific changes to the RACs based solely on the language of the repealed Stevens Amendment.

On August 26, 2002, the Federal Subsistence Board wrote to Deputy Secretary Griles stating it had completed its task of developing recommendations for restructuring the RACs and

was requesting approval of the recommendations contained in an attached report now entitled, 'FACA COMPLIANCE ON FEDERAL REGIONAL ADVISORY COUNCILS." Notwithstanding the title's reference to FACA, the changes being recommended were for the most part identical to those identified in the July 8 Discussion Paper that was developed to be consistent with the Stevens Amendments.

On September 13, 2002, Deputy Secretary Griles sent a letter to FSB Chair Demientieff directing him to 'implement the recommendations proposed in the Board's [August 26, 2002] report without delay." 9/13/002 Letter from Griles.

The Tribes then intervened in the pending litigation brought by Safari Club International and brought cross-claims against the federal government challenging the agency's failure to comply with the APA's rule-making process. In a January 22, 2004 Order, the district court held that the regional advisory councils are advisory bodies subject to FACA and that councils which exclude the viewpoints of non-subsistence users of federal public lands do not meet the FACA fair balanced requirement. The Court also held that the federal agency failed to go through proper rule-making procedures before implementing the 70/30 rule for the makeup of the regional advisory councils.

**Comments**

Gideon James, the Venetie Tribal Government, the Ninilchik Traditional Council, the Alakanuk Traditional Council, and the Nunam Iqua Traditional Council strongly disagree with the holding that the FACA's fair balanced representational requirement requires the appointment of sport and commercial interests on the RACs. The functions of RACs are solely concerned with ensuring that the federal subsistence priority will be met. The RACs do not have a general advisory role on all fish and game matters – sport, commercial and subsistence – as the State of Alaska Fish and Game Advisory Committees do. The 70/30 quota allocation is an arbitrary allocation of seats which rewards representatives of sport and commercial interests as contemplated in the failed Stevens Amendment. FACA's fair balance requirement does not require a quota allocation for competing user groups; if it did, representation should include views from other interest groups other than sport and commercial interests. The Stevens Amendments contemplated specific changes to the RACs in exchange for important concessions by the State of Alaska. When the State refused to grant these concessions, the Amendment died. Without state authority to revise the RACs, the 70/30 allocation gives sport and commercial interests a special regulatory status.

There is nothing in ANILCA that provides a basis for RAC seat quotas for the exclusive representation of sport or commercial interests. Indeed, it misconstrues the intent of Congress to construe a statute that was designed exclusively to benefit subsistence users, and to allow for 'maximum participation . . . by subsistence users", ROD-18, to weaken subsistence and alter the structure of the RACs so as to provide quota representation to individuals opposed to subsistence. Congress's intent was to provide a 'meaningful role" to subsistence users to participate effectively in the management and regulation of subsistence resources on the public