DEAN K. DUNSMORE
DEPARTMENT OF JUSTICE
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
Tel: (907)271-5452
Fax: (907)271-5827
Email: dean.dunsmore@usdoj.gov
Attorney for Defendants

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL,<br>ALASKA CHAPTER OF SAFARI CLUB<br>INTERNATIONAL, et al. | )<br>) Case No. 3:98-cv-00414-HRH<br>)<br>) |
| Plaintiffs, | ) POINTS AND AUTHORITIES<br>) IN SUPPORT OF |
| v. | ) DEFENDANTS' MOTION TO<br>) AMEND JUDGMENT - FEDERAL<br>) RULE OF CIVIL PROCEDURE 59 |
| MITCH DEMIENTIEFF, Chairman,<br>FEDERAL SUBSISTENCE BOARD,<br>et al., | )<br>)<br>) |
| Defendants. | )<br>) |

On June 20, 2006, the court entered a Judgment in a Civil Case (Docket Entry No. 273) "in favor of intervenors and against defendants." For the reasons set forth in the arguments that follow, entry of this judgment was improper because it is a partial final judgment entered without compliance with Fed.R.Civ.P. 54(b). Further, the purported judgment is contrary to law as it would impose requirements on the defendants not required by the Administrative Procedure Act, 5 U.S.C. § 553.

Intervenors sought review of the Final Rule promulgated on

October 14, 2004, at 69 Federal Register 60957-962. This rule addressed the membership qualifications for the Federal Subsistence regional advisory councils, and implemented the determinations and remand of this court in its Order Motion for Summary Judgment (Docket Entry No. 208) filed January 16, 2004, at 52-65, and Judgment in a Civil Case (Docket Entry No. 209) filed January 21, 2004.

    A. **<u>Prior Proceedings</u>**. The statutory provisions for the establishment of the regional advisory councils and the history of the Federal government's implementation of that requirement are set forth in Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment and Brief of the Intervenors' (Docket Entry No. 191) filed May 14, 2003, at 18-25. Starting in January 2002, defendants analyzed the requirements of both Title VIII of the Alaska National Interest Lands Conservation Act (ANILCA) of December 2, 1980, Pub. L. No. 96-487, 94 Stat. 2371, 2422-30, 16 U.S.C. §§ 3111-3126, and the Federal Advisory Committee Act (FACA) of October 1, 1972, Pub. L. No. 92-463, 86 Stat. 770, with regard to the appropriate composition of the regional advisory councils. *Id*. at 21-25. In the culmination of that review process, the Deputy Secretary of the Interior accepted recommendations of the Federal Subsistence Board regarding appointments to the councils, including increasing the size of the councils and establishing the goal of appointing non-subsistence users to the councils so as to have a

70% representation of subsistence interests and a 30% representation of non-subsistence users on these councils. *Id.* at 22-23. This policy, however, was adopted without public notice and opportunity to comment. Order Motion for Summary Judgment (Docket Entry No. 208) at 60.

Intervenors were permitted to file a cross-claim in this action challenging this policy. With respect to the claims of the intervenors, the court held that the 70/30% policy was a legislative rule whose adoption required conformance with the public notice and comment requirements of 5 U.S.C. § 553. *Id.* at 61-62. The Court enjoined defendants' application of that policy and ordered defendants to:

> promptly undertake the initiation of appropriate rule-making proceedings for purposes of reconsidering membership qualifications (quotas) for regional advisory councils. Defendants shall promptly undertake the adoption and implementation of an appropriate regional advisory council membership regulation consistent with FACA after compliance with 5 U.S.C. § 553.

*Id.* at 64-65. The court retained jurisdiction pending the rule making proceeding. *Id.* at 65.

B. **Proceedings After Prior Remand**. In conformance with the court's order, defendants published at 69 Federal Register 19964-68 (April 15, 2004) a proposed rule to amend the regional council membership provisions of 36 C.F.R. § 242.11(b) and 50 C.F.R. §

100.11(b), and solicited comments on that proposal.[1]/ Subsequently, a final rule was promulgated. 69 Federal Register 60957, 60962 (October 14, 2004). That rule as promulgated reads in full as follows:

> (b) *Establishment of Regional Councils; membership.* (1) The Secretaries, based on Board recommendation, will establish the number of members of each Regional Council. To ensure that each council represents a diversity of interests, the Board will strive to ensure that 70 percent of the members represent subsistence interests within a region and 30 percent of the members represent commercial and sport interests within a region. The portion of membership that represents the commercial and sport interests shall include, where possible, at least one representative from the sport community and one representative from the commercial community. A Regional Council member must be a resident of the region in which he or she is appointed and must be knowledgeable about the region and subsistence uses of the public lands therein. The Board will accept nominations and make recommendations to the Secretaries for membership on the Regional Councils. In making their recommendations, the Board will identify the interest(s) the applicants propose to represent on the respective Regional Councils. The Secretary of the Interior with the concurrence of the Secretary of Agriculture will make the appointments to the Regional Councils.

69 Federal Register at 60962, codified at 36 C.F.R. § 242.11(b)(2005).

Intervenors were granted leave to amend their answer and

---

[1]/   Since the regulations that appear in 36 C.F.R. part 242 and 50 C.F.R. part 100 are identical, further references herein will be to the regulations codified in 36 C.F.R. part 242.

cross-claims to seek review of the above-quoted regulation. Order Motion for Leave to Amend (Docket Entry No. 244) filed March 9, 2005. The intervenors moved for summary judgment (Docket Entry No. 258) on their claim. The court on June 12, 2006, entered a decision granting intervenors' motion. Order Motion for Summary Judgment (Docket Entry No. 269). Both defendants and plaintiffs filed motions for reconsideration on June 16 and June 19, 2006, respectively (Docket Entry Nos. 270 and 271) of the court's June 12, 2006 order. Despite the pendency of these motions, the court proceeded to enter the Judgment in a Civil Case (Docket Entry No. 273) on June 20, 2006.[2]/ This judgment is as follows:

> The court declares that the final rule imposing a 70/30 membership structure for the regional advisory councils is void because defendants have failed to engage in a considered analysis of the relevant factors and to articulate their rationale for the choices made in adopting the final rule. Defendants and all others acting in concert with them are enjoined and restrained from further implementation of the 70/30 final rule and regional advisory council charter provisions based thereon. Defendants shall promptly undertake the initiation of adequate rule-making proceedings for purposes of reconsidering membership qualifications for regional advisory councils. Defendants shall promptly undertake the adoption and implementation of the appropriate regulation consistent with FACA and ANILCA.
>
> The court retains jurisdiction over the

---

[2]/    Judgment was entered even though the court had also on June 19, 2006, solicited responses to defendants' motion. Order From Chambers (Docket Entry No. 272).

amended complaint in intervention. Further
proceedings in this case are stayed pending
rule-making by defendants as prescribed by the
foregoing judgment. At any time and for any
appropriate reason, any party may petition to
have these proceedings reopened.

**ARGUMENT**

I. A JUDGMENT HAS NOT BEEN PROPERLY ENTERED

This case involves both multiple claims and multiple parties.
However, the Judgment in a Civil Case (Docket Entry No. 273) on its
face only addresses claims of the intervenors. It does not mention
any claims of the plaintiffs. A final judgment on fewer than all
claims or fewer than all parties may be entered only under Fed. R.
Civ. P 54(b). A Rule 54(b) judgment may be entered "only upon an
express determination that there is no just reason for delay and
upon an express direction for entry of judgment." While the Court
did direct the clerk of court to enter a judgment, Order Motion for
Summary Judgment (Docket Entry No. 269), at 29-31, the Court did
not make the required "express determination that there is no just
reason for delay." Therefore, even though a form captioned Judgment
in a Civil Case has been entered in this case, it does not
constitute a final judgment on any of the claims of either
plaintiffs or intervenors.[3]/ *American Interinsurance Exchange v.*

_____

[3]/   The Court has also specifically retained jurisdiction over
this action. In the past, the court held that this shows that the
court did not enter a final judgment on all claims in this
action. Order Motion for Award of Attorney's Fees and Costs
(Docket Entry No. 230) filed November 24, 2004, at 5.

*Occidental Fire and Casualty Co.*, 835 F.2d 157, 159 (7th Cir. 1987); *General Television Arts, Inc. v. Southern Ry.*, 725 F.2d 1327, 1331 (11th Cir. 1984).

For the reasons set forth in the arguments that follow, any judgment entered in this action on the claim of the intervenors should be in favor of the defendants. Further, that judgment should also address and dismiss the three claims of the plaintiffs. Claims 1 and 2 should be dismissed for lack of standing; and Claim 3 dismissed as moot. Order Motion for Summary Judgment (Docket Entry No. 208) filed January 16, 2004, at 64; Order Motion for Leave to Amend (Docket Entry No. 244) filed March 9, 2005, at 3, 10; Plaintiffs' Opposition to Intervenors' Memorandum On Amended Cross-Claim (Docket Entry No. 164) filed November 23, 2005, at 13.

## II. THE JUDGMENT SHOULD BE AMENDED TO GRANT JUDGMENT FOR THE DEFENDANTS

The court addressed the merits of intervenors' claims in its Order Motion for Summary Judgment (Docket Entry No. 269) filed June 12, 2006. That order rejected most of the contentions of the intervenors. In part 3b at pages 25-27 of that order, however, the court addressed intervenors' contention that defendants failed to consider whether a fair balance of views on the regional advisory councils could be achieved by alternatives to a single interest quota system of representation. The court agreed that a single interest representational structure did not violate the Federal Advisory Committee Act (FACA) of October 1, 1972, Pub. L. No. 92-

463, 86 Stat. 770. Order (Docket Entry 269) at 23-24, 28-29. However, the court concluded:

> Having reviewed the administrative record that has been certified to the court and upon which the final rule depends for validity, the court can find no evidence to suggest that defendants considered any means of achieving fairly balanced, regional advisory councils other then the 70/30 single-interest representation structure. Given the history of the regional council make-up, and the long history of antagonism between competing groups, defendants should have considered ways to get the necessary balance without going to a scheme that brings the confrontation between subsistence users and commercial users into such stark focus. In short, there is nothing in the certified administrative record that shows that defendants considered significant alternatives.

*Id.* At 26-27.

The judgment against defendants entered on June 19, 2006, depends exclusively on the foregoing ruling. That ruling is incorrect as a matter of law because it misinterprets the duties imposed on agencies by the Administrative Procedure Act (APA) in the rule making process by 5 U.S.C. § 553, and the role of the courts in reviewing such actions under 5 U.S.C. §§ 710-706.

It is not the role of the courts under the APA to substitute their judgment for that of the agencies, *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415-16 (1971); *Arizona v. Thomas*, 824 F.2d 745, 748 (9th Cir. 1987), or to impose on the agencies specific procedural requirements not present in the APA. *Vermont Yankee Nuclear Power Corp. V. Natural Resources Defense*

*Council*, 435 U.S. 519, 543-47 (1978); *Midwater Trawlers Co-Operative v. Department of Commerce*, 393 F.3d 994, 1006 (9th Cir. 2004). Unfortunately, the Court appears, in this instance, to have done both.

The Court misread the decision in *Mt Diablo Hospital v. Shalala*, 3 F.3d 1226, 1232 (9th Cir. 1993), as creating a requirement that an agency develop and consider a range of alternatives when it proposes and considers a potential rule making. That was neither the issue, nor the holding in *Mt Diablo Hospital.* In that case the issue was whether the agency had provided an explanation responsive to every comment, not whether an agency has an independent obligation to develop and consider alternatives, not proposed in public comments. *Midwater Trawlers Co-Operative,* 393 F.3d at 1006-07.

When the APA requires publication of notice of proposed rule making in the Federal Register, it provides that the notice reference "the legal authority under which the rule is proposed," and "the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b)(2)&(3). Interested persons are to be given an opportunity "to participate in" and submit "data, views, or arguments" on the proposed rule making. 5 U.S.C. § 553( c). The agency "after consideration of the relevant matter presented...shall incorporate in the rules adopted a concise statement of their basis and purpose." *Id.* Nothing in the

statute requires an agency to develop and consider alternatives to the proposed rule making. In fact, when Congress has required the consideration by an agency of alternatives to a proposed action, it has explicitly so provided. *E.g.* Section 102 of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332(C)(iii).[4]/

Further, an agency's action would be arbitrary and capricious:

> [I]f the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Manufacture's Ass'n v. State Farm Mutual Automobile Ins.*, 463 U.S. 29, 43 (1983). *Accord United States v. Clark*, 912 F.2d 1087, 1090 (9th Cir. 1990). Significantly missing from this list is the failure of an agency to independently raise and consider alternatives to its proposed rule making.

The Court relied on the following language in *Mt Diablo Hospital v. Shalala*, 3 F.3d 1226, 1232 (9th Cir. 1993), as requiring an agency to independently consider alternatives to its proposed

---

[4]/    The Court may have been equating the requirements of NEPA with those of the APA. For example, the Court noted that no "formal record of decision" was published. Order (Docket Entry No. 269) at  18. A record of decision is a requirement in the regulations issued for the implementation of NEPA, 40 C.F.R. § 1505.2, and not the APA. In this instance the Secretaries' decision and the basis therefor is set forth in 69 Federal Register 60957-62 (Oct. 14, 2004), 10 Administrative Record Tab 82.

action: "Agency actions cannot be sustained where the agency has failed to consider significant alternatives." The quoted language is taken out of context. Nothing in that decision held that agencies must independently consider alternatives to a proposed rule making (in this case "the 70-30, single-interest representation structure"). Instead, that decision held only that agencies must consider and address comments submitted in response to their proposal. The issue in *Mt. Diablo Hospital* was whether the Secretary of Health and Human Services failed to consider the impact of part-time workers in determining eligible costs under the Medicare reimbursement program. In that case, the facts pertaining to part-time workers were submitted in response to the public notice and the Secretary was requested to consider that information in determining the schedule of reimbursement. F.3d at 1229, 1231-32. The plaintiffs in the *Mt. Diablo Hospital* case alleged that the Secretary failed to consider these comments, *id*. at 1232, and the issue before the Court of Appeals, was whether, after being given this information, the Secretary adequately considered all "relevant factors." *Id*. at 1232.

The decision relied upon by the Court of Appeals in *Mt. Diablo Hospital* for the statement quoted by this Court was *International Ladies Garment Workers' Union v. Donovan*, 722 F.2d 795, 815-16 (9th Cir. 1983). That case likewise did not involve the issue of whether the government had an independent duty to develop and consider

alternatives to a proposed rule making. Rather, in *International Ladies Garment Workers' Union* the Ninth Circuit addressed whether the Secretary of Labor had unlawfully rescinded longstanding restrictions on the employment of workers in their homes. F.2d at 798. In that case, the Secretary had identified alternatives to the proposal, *id*. at 815, and had received comments suggesting various additional alternatives to the proposed complete rescission. *Id*. at 815-16. The Court of Appeals found the Secretary's action to be invalid, not because he did not independently consider a range of alternatives, but because he did not "provide the slightest indication that he gave any consideration to the alternatives raised in his original notice and the comments."

Thus, neither the *Mt. Diablo Hospital*, nor the *International Ladies Garment Workers'* decisions involved the issue of whether the Government has an independent duty under the APA to develop and consider alternatives when it proposes and promulgates a rule making. Those cases addressed only the issue of whether adequate consideration was given to information and alternatives received during the public comment and hearing stage. Those decisions neither recognized nor created the duty the Court found in this case: an obligation independent of the comments received to evaluate potential alternatives to the 70/30 single-interest representational system.

The decision in *Pension Benefit Guaranty Corp. V. LTV Corp.*,

496 U.S. 633 (1990), is particularly instructive and analogous. One contention in *Pension Benefit* was that the decision of the Pension Benefit Guaranty Corporation was arbitrary and capricious because it did not take into consideration "all of the areas of the law the court [of appeals] deemed relevant" to the decision. 496 U.S. at 645. In particular, the claim was that consideration should have been given not only to the statute administered by the corporation, but also to labor and bankruptcy law. *Id*. This contention was rejected not only as not required by the law administered by the corporation, but also "as not making good sense as a general principle of administrative law."

The Supreme Court in *Pension Benefit* also reversed the decision of the Court of Appeals on the grounds that it would require the corporation to undertake additional procedures not required by the APA. *Id*. at 653-55. The Court noted in part that no provision of the APA had been identified that required these additional procedures. *Id*. at 654. This court's decision in part 3b at pages 25-27 of the Order Motion for Summary Judgment (Docket Entry No. 269) contains similar deficiencies, for it too does not identify any provision in either FACA, Title VIII of the ANILCA, or the APA that requires defendants to independently develop and consider additional alternatives.

Instead, the record in this case shows that the Secretaries have fully met the obligations imposed on them by the APA as set

forth in the *Mt. Diablo Hospital* and *International Ladies Garment Workers'* decisions. The written comments received to the proposed rule making are found in 5 Administrative Record (AR), Tab 36. The comments received at the public hearing are found in 6 AR Tab 39 at 5261-87. The comments received are summarized and specifically addressed in 69 Federal Register 60959 col. 2 through 60961 col. 1. A comparison of the comments received and the Federal Register will shows that all substantive comments were identified and addressed, and that the reasons given for not adopting any of these comments are not arbitrary and capricious or contrary to law.

The comments related to the proposed 70/30% representational balance and single-interest representation are identified and addressed at 69 Fed. Reg. 60960 col. 1 and col. 2. The comments are found in 5 AR Tab 36 at 4989-91 and 6 AR Tab 39 at 5274-75. The comments opposed the "70/30 quota allocation" on the grounds that it was contrary to ANILCA to provide for "exclusive representation of sport and commercial interests," and not needed as the Councils were already balanced. *Id*. The only alternatives suggested in the comments were to continue the existing system, to evaluate all regional advisory council nominees by the same neutral, relevant criteria rather than use a quota system, and to achieve balanced representation through consideration of a percentage of each individual members' activities rather than use single-interest representation. *Id*. The agency specifically addressed these

comments. 69 Fed. Reg. 60959 col. 3 to 60960 col. 1; 60960 col 2.

The Secretaries also identified and addressed the each of the other comments regarding the composition of the councils: subsistence users need to be in the majority, 69 Fed. Reg. 60959 col. 3; rural communities should be allocated one seat, *id* 60959 col. 3 - 60960 col.1; sport users should be banned from the councils, *id*, 60960 col. 1; representation should be no more than 70% for subsistence users, *id.*; representation should be 80/20, *id. cols. 1-2;* there should be a public interest representative on each council, *id.* cols. 2-3; other interests should be represented such as conservation, Native and recreation, *id.* col. 3; council composition should maintain ethnic, gender and geographical balance, *id*; and all nominees should be evaluated on the same criteria, *id.* 60961 col. 1.

As shown above, defendants set forth a considered and reasoned analysis to the comments received to their proposed rule making. This is all that was required by the APA. They were not required to consider alternatives not raised in the comments. Therefore, the Court's ruling in part 3b of the Order of June 12, 2006, is in error and contrary to law.[5]/ That portion of the Order of June 12, 2006, should be corrected and the judgment filed June 20, 2006,

---

[5]/   This will also require the Court to address that portion of part 3e of its Order at 29, regarding the exclusion of interests other than sport and commercial users on which it did not rule because of its ruling in part 3b.

should be vacated.

   III. IN THE ALTERNATIVE, THE INJUNCTIONS SHOULD BE MODIFIED

   In the alternative, if the court does not vacate the Judgment in a Civil Case (Docket Entry No. 273), the injunctions set forth in that judgment should be modified. Declaratory judgment is not the only relief granted the intervenors. Defendants are enjoined from taking certain actions and required to take other actions as follows:

>    Defendants and all others acting in concert with them are enjoined and restrained from further implementation of the 70/30 final rule and regional advisory council charter provisions based thereon. Defendants shall promptly undertake the initiation of adequate rule-making proceedings for purposes of reconsidering membership qualifications for regional advisory councils. Defendants shall promptly undertake the adoption and implementation of an appropriate regional advisory council membership regulation consistent with FACA and ANILCA.

   A. **Injunctive Relief Is Not Appropriate**. Injunctive relief is equitable relief and is not to be mechanically entered for every violation of law. *Amoco Production C. V. Gambell*, 480 U.S. 531, 553-54(1987). Instead, courts are to balance the competing claims of injury, the effect on the parties, and the public interest in the granting or withholding injunctive relief.[6]/ *Id.* at 553. In

---

[6]/   The courts are when the public interests will be affected, to expressly consider on the record the public interest. *Northern Cheyenne Tribe v. Hodel*, 951 F.2d 1152, 1157 (9th Cir. 1988). The court has also in this instance failed to do that.

this case a balancing of the equities and the public interest leads to the conclusion that enjoining defendants from utilizing the 70/30 final rule is inappropriate. Further, the fundamental basis for any injunctive relief is irreparable injury and inadequacy of legal remedies. *Id.* Intervenors will suffer no irreparable injury if defendants are permitted to continue to rely of the 70/30 final rule, and they have a fully adequate remedy should their interests in the federal subsistence priority be improperly limited in any way.

The regional advisory councils are an integral and required part of the implementation of the Title VIII subsistence use priority. 16 U.S.C. § 3115(a); 36 C.F.R. §§ 242.10(e), 242.11. Implementation of the Federal subsistence use priority depends in significant part on the participation of the regional advisory councils. Delays in appointments to regional advisory councils could have adverse impact on defendants' implementation of the Federal subsistence priority. Declaration of Peter Probasco, attached as Exhibit 1 hereto, ¶ 13. This is particularly so since the procedure for the appointment of members to the regional advisory councils started in October 2005 with the request for nominations and applications. *Id.* ¶ 6. The application period closed in January 2006 for the appointments to be made in 2006. *Id.* ¶ 7. These applications and nominations have already been given extensive consideration by Interagency Nominations Panels and the

Interagency Staff Committee of the Office of Subsistence Management. *Id.* ¶¶ 8-9. Nominations would be made by the Board and sent to the Secretaries of the Interior and Agriculture and the nominations themselves made two to three months later. *Id.* ¶ 9. The Federal Subsistence Board was scheduled to consider the applications and nominations at a meeting scheduled for June 15, 2006, but cancelled that meeting following entry of the Order of June 12, 2006. *Id.* ¶ 10. The court's injunction has thus already delayed the appointment process, and if not modified will likely add significant delay to that process. *Id.* ¶ 12.

Further, as a result of the voiding of the existing rule, and the voiding of the earlier of the prior 70/30% policy, the nomination and selection of members of the regional advisory councils, there is no rule or policy in place for that nomination and selection process. Therefore, the making of any new appointments will certainly be delayed for an indeterminant amount of time.

Regional advisory council nominations are for three-year, staggered terms. 36 C.F.R. § 242.11(b)(2). Therefore, at least one-third of the existing Regional Advisory Council appointments will expire on December 2, 2006. Declaration of Peter Probasco ¶ 4. Given the terms of the current injunction, it cannot now be determined how long it may be until these vacancies can be filled. *See, Id.* ¶¶ 12-13. The full impact of these vacancies on the

ability of a specific Regional Advisory Council to carry out their functions cannot be identified at this time, but may be significant.

The court's injunction also incorrectly assumes that only intervenors have an interest in the representational balance of the regional advisory council. This overlooks the interest shown by the plaintiffs in this action. The court's injunction may lead to a diminution of the rights of the plaintiffs, because delays in the ability to fill regional advisory council vacancies may affect the representational balance on the councils. *Id.* ¶ 13.

For the foregoing reasons, public policy favors permitting defendants to continue to rely on the current 70/30 rule until it is replaced by a new rule. That continuation might terminate in about a year.[7]/ The court's previous order requiring the prompt initiation and completion of a rule making was issued on January 21, 2004. Judgment in a Civil Case (Docket Entry No. 209). The final rule was promulgated on October 14, 2004. 69 Federal Register 60957.

During this time period, no irreparable injury should occur to the intervenors, and they have not shown any such injury. This is especially so because the court acknowledges that the current 70/30% single-interest representation final rule is not contrary to

---

[7]/    Given the nature of the court's Order of June 12, 2006, any required new rule making may be more complicated and require more time to complete.

law, Order (Docket Entry No. 269) at 23-24, 28-29, and might even, following remand, again be adopted by defendants.

Intervenors also have an adequate remedy available to them, should they be injured by any action of a regional council. The councils themselves take no regulatory action. Should the Federal Subsistence Board or the Secretaries take final action that adopts a recommendation made by a council that leads to any failure to provide for the priority for subsistence set forth in 16 U.S.C. § 3114, intervenors could bring suit to challenge that action and they could, if appropriate, obtain injunctive relief at that time. 16 U.S.C. § 3117(a). Injunctive relief now is, therefore, not needed to protect the interests of the intervenors.

B. **The Injunction Should Be Clarified.** Assuming that the court does not vacate its injunction against continued implementation of the 70/30 final rule, it should clarify the extent of that injunction. The language of the injunction appears to be prospective only, for it only enjoins "**further implementation** of the 70/30 final rule and regional advisory council charter provisions based thereon." (Emphasis added) Therefore, the court does not appear to require that any appointments already made under the invalidated rule be rescinded, does not prohibit any of the individuals appointed under that rule from continuing to fulfill the duties of a member of a regional advisory council during the term of their appointment, or preclude defendants from relying on

the recommendations of any council that contains members appointed under that rule. It could be useful in precluding any possible future disputes, however, if the court would so explicitly state in any injunction it might enter in this case. This is particularly desirable where, as here, the court has declared that the rule is "void."

Further, the injunction as written requires defendants to "undertake the adoption and implementation of an appropriate regional advisory council membership regulation consistent with FACA and ANILCA." Defendants suggest that this language is overly broad in that it could be interpreted to be a violation of the injunction itself should the defendants at the completion of the ordered new rule making adopt a new final rule that a court later finds to be inconsistent with either FACA or ANILCA. To require action "consistent with" either statute when that consistency can only be determined after completion of judicial review under the APA is not sufficiently specific to meet the requirements of Fed. R. Civ. P. 65(d).

Defendants suggest that the court simply enter the following: "defendants shall promptly undertake pursuant to the principles in the order of June 12, 2006, the initiation and completion of rule-making proceedings for purposes of reconsidering membership qualifications for regional advisory councils." With that injunction, the court could delete the following: "Defendants shall

promptly undertake the adoption and implementation of an appropriate regional advisory council membership regulation consistent with FACA and ANILCA" as unnecessary.

## CONCLUSION

For the foregoing reason, the court should amend and vacate the Judgment in a Civil Case (Docket Entry No. 273) filed June 20, 2006.

DATED this 28th day of June 2006.

/s/ Dean K. Dunsmore
DEAN K. DUNSMORE
DEPARTMENT OF JUSTICE
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
Telephone:(907)271-5452
Facsimile: (907)271-5827
Email: dean.dunsmore@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of June 2006 a copy of the foregoing **POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO AMEND JUDGMENT - FEDERAL RULE OF CIVIL PROCEDURE 59** was served electronically on:

Brent R. Cole
Anna M. Seidman
Heather Kendall-Miller
Carol H. Daniel

/s/ Dean K. Dunsmore
DEAN K. DUNSMORE
Attorney for Defendants