IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

SAFARI CLUB INTERNATIONAL, et al., )
                                   )
                    Plaintiffs,    )
                                   )
     vs.                           )
                                   )
MITCH DEMIENTIEFF, Chairman, Fed-  )
eral Subsistence Board, et al.,    )
                                   )
                    Defendants,    )
                                   )
     and                           )
                                   )
NATIVE VILLAGE OF VENETIE TRIBAL   )
GOVERNMENT, et al.,                )
                                   )
                                   )     No. 3:98cv0414-HRH
          Defendant-Intervenors.   )
                                   )

AMENDED ORDER

Motion for Summary Judgment

Intervenors move for summary judgment on their amended cross-claim.[1] This motion is opposed.[2] Oral argument has not been requested and is not deemed necessary.

By order of June 12, 2006,[3] the court granted intervenors' motion for summary judgment and entered judgment on

---

[1] Clerk's Docket No. 258.

[2] Clerk's Docket Nos. 263 and 264.

[3] Clerk's Docket No. 269.

- 1 -

intervenors' amended cross-claim against defendants. By order of August 7, 2006,[4] the court withdrew the foregoing order and vacated its judgment based upon defendants' and plaintiffs' motions for reconsideration[5] and defendants' motion to amend judgment.[6] The court now enters its amended order, again granting intervenors' motion for summary judgment on its amended cross-claim against defendants.

## Background

Plaintiffs are Safari Club International, the Alaska Chapter of Safari Club International, Alaska's Kenai Peninsula Chapter of Safari Club International, Kenai Peninsula Outdoors Coalition, and Jerry Jacques. Defendants are Mitch Demientieff, Chairman of the Federal Subsistence Board; Dirk Kempthorne, Secretary of the Interior;[7] and Mike Johanns, Secretary of Agriculture. Intervenors are the Native Village of Venetie Tribal Council, Gideon James, Ninilchik Traditional Council, Alakanuk Traditional Council, and Nunam Iqua Traditional Council.

This case began as a challenge by plaintiffs to the make-up of the regional advisory councils that report to the Federal Subsistence Board (FSB), which enjoys delegated authority from the Secretaries for purposes of regulating subsistence hunting and

---

[4]   Clerk's Docket No. 298.

[5]   Clerk's Docket Nos. 270 and 271.

[6]   Clerk's Docket No. 277.

[7]   Dirk Kempthorne has been substituted for his predecessor as Secretary of the Interior pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure.

fishing on public lands[8] pursuant to the Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C. §§ 3101-3233.[9] Section 3115 of ANILCA, which sets forth the administrative structure for implementing the subsistence priority established in section 3114, expressly calls for the establishment of regional advisory councils (RACs). In 1993, the Secretaries determined that Alaska should be divided into ten subsistence resource regions, each of which was to be represented by a regional advisory council.

Section 3115(a) of ANILCA requires council members to be residents of the region they are appointed to represent. In addition to the residency requirement of section 3115(a), the Secretaries' regulations at all times have required that:

> A Regional Council member must ... be knowledgeable about the region and subsistence uses of the public lands therein.

50 C.F.R. § 100.11(b)(1).

Starting in January of 2002, the FSB, at the request of the Interior Department, began a review of the regional advisory council membership process, which was prompted by concern that the regional advisory councils might be out of compliance with the Federal Advisory Committee Act (FACA), 5 U.S.C. app. 2 §§ 1-16. The FSB's final recommendations to the Interior Department included changing the size of seven of the regional advisory councils to ten

---

[8]   16 U.S.C. § 3102(3).

[9]   Plaintiffs also challenged a host of customary and traditional hunting and fishing use determinations by the FSB, but that portion of the case has been resolved and is not at issue here.

- 3 -

members and three to thirteen members; having designated seats on each council of 70% subsistence users and 30% sport and commercial users; and adding to the nomination process questions regarding the applicant's knowledge of fish and wildlife resources, subsistence uses, customs, traditions, recreational/sport uses, and commercial uses.[10]  On September 13, 2002, the FSB chairman was instructed "to implement the recommendations proposed in the Board's report without delay,"[11] which the FSB did for the 2003 membership selection process.

Plaintiffs supported the implementation of the 70/30 policy because they had challenged the membership requirements for regional advisory councils on the ground that the councils did not comply with the "fairly balanced" requirement of FACA.  Intervenors took an opposite view.  Intervenors, who entered the case after defendants decided to implement the 70/30 policy, opposed the policy, contending that the regional advisory councils did not have to comply with FACA.  But even if the councils had to comply with FACA, intervenors contended that the councils, as they then existed, did comply with FACA and the 70/30 policy was thus unnecessary for FACA compliance.  Intervenors also asserted that defendants were required to engage in notice-and-comment rule-making as set forth in the Administrative Procedure Act (APA),

---

[10]  See Letter from Mitch Demientieff to J. Steven Griles and attached report, Administrative Record for Venetie Cross-Claim, Tab 23, at 477-505.

[11]  Letter from J. Steven Griles to Mitch Demientieff, Administrative Record for Venetie Cross-Claim, Tab 24, at 506.

- 4 -

5 U.S.C. § 553, but had failed to do so prior to implementing the 70/30 policy.

Plaintiffs' and intervenors' claims as to the membership requirements for regional advisory councils were submitted to the court on motions for summary judgment. By order of January 16, 2004,[12] the court denied in part and granted in part plaintiffs' and intervenors' motions for summary judgment. The court determined that the regional advisory councils are advisory bodies subject to FACA and that councils which exclude the viewpoints of non-subsistence users of public lands do not meet FACA's "fairly balanced" requirement. However, the court enjoined the Secretaries from implementing the 70/30 policy because the plan was not adopted in compliance with the rule-making requirements of the APA. On January 21, 2004, judgment[13] was entered in favor of intervenors and against defendants. The judgment ordered defendants to:

> promptly undertake the initiation of appropriate rule-making proceedings for purposes of reconsidering membership qualifications (quotas) for regional advisory councils. Defendants shall promptly undertake the adoption and implementation of an appropriate regional advisory council membership regulation consistent with FACA after compliance with 5 U.S.C. § 553.[14]

At its work session on January 27, 2004, in an executive session, the FSB decided not to appeal the court's decision and to

---

[12] Clerk's Docket No. 208.

[13] Clerk's Docket No. 209.

[14] Id. at 1.

- 5 -

proceed promptly with rule-making.[15] Because these decisions were made in executive session, there is no record of what discussion, if any, was had about the substance of a new proposed rule.

At their winter meetings in February and March of 2004, the regional advisory councils were informed that a proposed rule adopting the 70/30 structure would be published soon. The councils were advised that the comment period for the proposed rule would be prior to their fall meetings, but they were also told that they could offer comment on the proposed rule at their winter meetings (before the proposed rule was actually published) or that they could comment during the "official" comment period as individuals. Some of the regional advisory councils expressed concern that they would not be able to comment on the proposed rule as a body. Other councils had no discussion on the proposed rule and simply moved to another agenda item after the briefing on the proposed rule.

On April 15, 2004, the Secretaries published a proposed rule to amend the regional council membership provisions of 36 C.F.R. § 242.11(b) and 50 C.F.R. § 100.11(b).[16] See 69 Fed. Reg. 19,964-68. They explained that the purpose of the proposed rule:

> while complying with the District Court's order, is to ensure continued compliance with both the fairly balanced representational

---

[15] Administrative Record for Final Rule, Vol. 1, Tab 2, at 77.

[16] The Secretary of the Interior's subsistence management regulations are codified at Title 50 of the Code of Federal Regulations, Part 100. The Secretary of Agriculture's subsistence management regulations are codified at Title 36 of the Code of Federal Regulations, Part 242. This order will cite only the verison of the regulations found in Title 50.

- 6 -

> requirements of FACA and the requirements and purposes of Title VIII of ANILCA in the appointments to the Regional Councils. In the proposed change, the Secretaries recognize that some persons with interests other than subsistence uses are entitled under FACA to be represented on the Regional Councils, while recognizing that Congress intended in Title VIII for rural Alaska residents "who have personal knowledge of local conditions and requirements ... to have a meaningful role in the management of fish and wildlife and of subsistence uses on public lands in Alaska," and that Congress also intended that "large urban population centers" not be allowed to dominate the Regional Council system. The 70/30 representational goals of the proposed change to § ----.11(b) would assure the appropriate representation and meaningful majority role for rural Alaska residents, while providing an appropriate representation for the interests of nonrural residents and nonsubsistence users.

Id. at 19,966.

Comments on the proposed rule were due on June 1, 2004. The FSB received oral comments during a public meeting held in Anchorage, Alaska, on May 19, 2004. Written comments were also received.

The final rule was published on October 14, 2004, and became effective on November 15, 2004. The final rule reads:

> The Secretaries, based on Board recommendation, will establish the number of members for each Regional Council. To ensure that each Council represents a diversity of interests, the Board will strive to ensure that 70 percent of the members represent subsistence interests within a region and 30 percent of the members represent commercial and sport interests within a region. The portion of membership that represents the commercial and sport interests shall include, where possible, at least one representative from the sport community and one representative from the commercial community.

- 7 -

> A Regional Council member must be a resident of the region in which he or she is appointed and must be knowledgeable about the region and subsistence uses of the public lands therein. The Board will accept nominations and make recommendations to the Secretaries for membership on the Regional Councils. In making their recommendations, the Board will identify the interest(s) the applicants propose to represent on the respective Regional Councils. The Secretary of the Interior with the concurrence of the Secretary of Agriculture will make the appointments to the Regional Councils.

50 C.F.R. § 100.11(b)(1).

On March 9, 2005, intervenors were granted leave to amend their cross-claim to challenge the final rule.[17] In doing so, the court advised plaintiffs that they might respond to intervenors' amended cross-claim. Intervenors' amended answer and cross-claim was filed,[18] and plaintiffs did respond.[19]

Intervenors raise four claims in their amended pleading. In their first claim for relief they allege that the final rule violates ANILCA because "the Final Rule formalizes and implements the 70/30 allocation of RAC seats[.]"[20] In their second claim for relief, intervenors allege that the final rule violates FACA because FACA does not authorize or require that an agency allocate a specific number of seats to representatives of special interest

---

[17] Clerk's Docket No. 244.

[18] Clerk's Docket No. 245.

[19] Clerk's Docket No. 247. Defendants also filed an answer to intervenors' amended cross-claim. See Clerk's Docket No. 246.

[20] Intervenors' Amended Answer and Cross-Claims at 15, ¶ 41(c), Clerk's Docket No. 245.

groups and because the final rule does not further the functions to be performed by the regional councils as set forth in section 3115(a) of Title VIII of ANILCA.[21] In their third claim for relief, intervenors allege that the final rule violates the APA because it is "arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, short of statutory right, and without observance of procedure required by law[.]"[22] In their fourth claim for relief, intervenors allege that the final rule is inconsistent with the court's January 16, 2004, order because the final rule did not "result in a RAC membership regulation consistent with the FACA."[23]

Intervenors seek a declaration that "Defendants' designation of specific seats on the RACs to represent non-subsistence interests is in violation of section [3115] of ANILCA, FACA, and the APA, and is therefore void and of no legal effect."[24] Intervenors also seek to enjoin defendants "from designating specific seats on the RACs for special interest groups," and to require "Defendants to abide by the standards of administrative procedure prescribed by ANILCA and the APA[.]"[25] Lastly,

---

[21]   Id. at 16, ¶ 43.

[22]   Id. at 17, ¶ 46.

[23]   Id. at 18, ¶ 47.

[24]   Id. at 19.

[25]   Id.

- 9 -

intervenors request that the court declare the final rule invalid and enjoin its enforcement and implementation.[26]

Intervenors' motion for summary judgment is now before the court. Intervenors do not advance separate arguments for each of their claims. Instead, they raise four arguments that are apparently directed at all of their claims. Intervenors' four arguments are: (1) that defendants' action is not reasonably based in the law and constitutes an abuse of discretion; (2) that defendants failed to comply with the statutory mandate to put the proposed rule to the regional advisory councils for their review and recommendation as directed by section 3115 of ANILCA; (3) that defendants' decision to adopt a quota system of single-interest representation is arbitrary and capricious; and (4) that defendants' interpretation of FACA is not entitled to the deferential review prescribed by the Supreme Court in <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984). Intervenors' second and fourth arguments can be dealt with quickly and they will be addressed first. The focus of the discussion here will be on arguments one and three, namely whether the adoption of the final rule was arbitrary, capricious, or an abuse of discretion.

## Discussion

Intervenors' claims arise under the APA. 5 U.S.C. §§ 701-06. The scope of the court's review of agency action is

---

[26] <u>Id.</u>

determined by section 706(a) of the APA, which provides, in pertinent part, that the court shall:

>    (2) hold unlawful and set aside agency action, findings, and conclusions found to be —
>
>    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
>    (B) contrary to constitutional right, power, privilege, or immunity;
>
>    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
>    (D) without observance of procedure required by law; [or]
>
>    (E) unsupported by substantial evidence....

5 U.S.C. § 706.

### Argument Four — Deference

Intervenors argue that defendants' interpretation of FACA is not entitled to <u>Chevron</u> deference. In the January 16, 2004, order, the court noted that deference is usually afforded the Secretary of the Interior for ANILCA interpretations, but that no deference was to be afforded to the Secretaries for their interpretation of FACA, as they do not administer FACA.[27]

Defendants' briefing on the instant motion does not suggest any reason for the court to revisit this issue. Plaintiffs, however, argue that defendants' decision to impose the 70/30 structure in order to comply with FACA is entitled to "highly

---

[27] Order re Motions for Summary Judgment at 29, Clerk's Docket No. 208.

deferential review."  To support this argument, plaintiffs cite Cargill, Inc. v. United States, 173 F.3d 323 (5th Cir. 1999). There, in a footnote, the court observed that "[w]hile the functional balance and adequate staffing requirements are justiciable, they are subject to highly deferential review."  Id. at 335-36 n.24.

This authority, coupled with the very special purpose of FACA and the very subjective, agency-specific nature of the fairly balanced membership requirement of FACA, causes the court to entertain some doubt about its earlier ruling on this subject. The decisions of the Secretaries about FACA compliance may be entitled to deference even if Chevron deference does not apply. This issue will be held open for further consideration if necessary. For now, the resolution of another issue is dispositive of intervenors' motion for summary judgment.

### Argument Two — Regional Council Submission

Intervenors contend that defendants violated section 3115 of ANILCA by failing to put the proposed rule before the existing regional advisory councils for their review and recommendation. Section 3115 provides in pertinent part:

> Each regional advisory council shall be composed of residents of the region and shall have the following authority:
>
> (A) the review and evaluation of proposals for regulations, policies, management plans, and other matters relating to subsistence uses of fish and wildlife within the region[.]

16 U.S.C. § 3115(a). Intervenors argue that because section 3115 provides that regional advisory councils shall have the foregoing

authority, defendants were required to put the proposed rule before the councils for their review and recommendation. Intervenors contend that rules concerning the advisory council composition necessarily encompass matters concerning the taking of fish and wildlife on the public lands within their respective regions for subsistence use, and thus the Secretaries were required to put the proposed rule before the regional advisory councils for comment.

When this issue was raised during the comment period for the proposed rule, the Secretaries responded as follows:

> Section [3115(c)] requires the Secretaries to consider and give deference to Regional Advisory Councils' recommendations relative to the taking of fish and wildlife on public lands. The proposed membership balance rule is not a policy or regulation addressing the taking of fish and wildlife on public lands; and therefore, is not subject to the requirements of Section [3115(c)].

69 Fed. Reg. 60,957, 60,959. Here, defendants argue that the Secretaries correctly concluded that section 3115 did not require them to put the proposed rule to the regional advisory councils. Defendants again rely upon a portion of subsection 3115(c) that sets forth the Secretaries' responsibility as to council recommendations. Subsection (c) provides:

> The Secretary, in performing his monitoring responsibility pursuant to section 3116 of this title and in the exercise of his closure and other administrative authority over the public lands, shall consider the report and recommendations of the regional advisory councils concerning the taking of fish and wildlife on the public lands within their respective regions for subsistence uses.

16 U.S.C. § 3115(c).

- 13 -

The court concludes that the regulation at issue did not concern the "taking of fish and wildlife on public lands". Therefore, section 3115 did not require the Secretaries to submit the proposed rule as to regional council membership to the councils for their review prior to adopting the final rule.

Intervenors also contend that the Secretaries were required by <u>regulation</u>, 50 C.F.R. § 100.11(c)(1)(xii), to put the proposed rule before the regional advisory councils for comment. Section 100.11(c)(1)(xii) provides that regional advisory councils are authorized to "[p]rovide recommendations on the establishment and membership of Federal Advisory Committees."

Intervenors' reliance on 50 C.F.R. § 100.11(c)(1)(xii) is misplaced. The "Federal Advisory Committees" referred to in the regulation are those committees described in section 100.12. See 50 C.F.R. § 100.4. Section 100.12 describes the creation of:

> local Federal Advisory Committees within each region as necessary at such time that it is determined, after notice and hearing and consultation with the State, that the existing State fish and game advisory committees do not adequately provide advice to, and assist, the particular Regional Council....

50 C.F.R. § 100.12(a). In other words, the "federal local advisory committees" referred to in the regulation are <u>not</u> the regional advisory councils, but local committees that may be established in a region to advise and assist the regional council. Section 100.11(c)(1)(xii) does give the RACs the authority to make recommendations on federal advisory committee membership in addition to matters relating to the taking of fish and wildlife on

- 14 -

public lands; but it does not require the Secretaries to submit a question of policy, such as regional advisory council membership, to the councils prior to adoption of a regulation.[28]

### Arguments One and Three — Arbitrary, Capricious, Abuse of Discretion

1. Final Rule is not reasonably based on Title VIII of ANILCA.

Intervenors first argue that defendants' adoption of the 70/30 rule was an abuse of discretion because a quota system of single-interest representatives is contrary to the purpose and intent of ANILCA to protect subsistence uses on public lands. Intervenors, defendants, and plaintiffs argue the subject at length. A full recitation and analysis of those arguments is at this time inappropriate for reasons explained below.

In adopting Title VIII of ANILCA, Congress gave the Secretaries little guidance as to how they should choose or designate members of the regional advisory councils. Section 3115(a) simply provides: "[e]ach regional advisory council shall be composed of residents of the region[.]" The only other insight regarding membership of the councils is contained in the congressional findings and declarations that introduce Title VIII. There, we read:

> (5) the national interest in the proper regulation, protection, and conservation of fish and wildlife on public lands in Alaska and the continuation of the opportunity for a

---

[28] Of course, the record reflects that the Secretaries in fact advised the regional advisory councils of the proposed rule and the councils had an opportunity (which many took advantage of) to comment on the membership question.

>subsistence way of life by residents of rural Alaska require that an administrative structure be established for the purpose of enabling rural residents who have personal knowledge of local conditions and requirements to have a meaningful role in the management of fish and wildlife and of subsistence uses on the public lands in Alaska.

16 U.S.C. § 3111.

From the latter declaration, one can glean the following insights regarding the regional advisory councils.

>(1) The focus of Title VIII is not just the opportunity for perpetuation of a subsistence lifestyle. There is the coequal interest in the protection and conservation of fish and wildlife on public lands.
>
>(2) The administrative structure contemplated by Congress is to afford "rural residents" — not just subsistence users — a meaningful role in the management of fish and wildlife.

The above-quoted declaration was surely intended to give the Secretaries important insight into the role of regional advisory council members, which in turn gives guidance as regards membership qualifications. While Congress did not mandate single-interest members of regional advisory councils, it did not exclude such an approach. There is, however, a fair inference that rural residents who are not subsistence users of fish and wildlife should be included. The question of whether the proposed 70/30 rule (or

any other membership rule) fits into and is compatible with the above-quoted statutory provisions as regards the membership of regional advisory councils is patently an important one. For now, the court concludes only that a single-interest quota system of regional advisory council membership is neither required nor excluded by Title VIII of ANILCA.[29]

> 2. Final Rule is not reasonably based on FACA

Intervenors next argue that defendants' adoption of the final rule was an abuse of discretion because it is not reasonably based on FACA. FACA requires advisory committees to have memberships that are "fairly balanced in terms of the points of view represented and the functions to be performed[.]" 5 U.S.C. app. 2 § 5(b)(2). Appendix A to the regulations provides further elaboration on the "fairly balanced" requirement:

> The composition of an advisory committee's membership will depend upon several factors, including: (I) The advisory committee's mission; (ii) The geographic, ethnic, social, economic, or scientific impact of the advisory committee's recommendations; (iii) The types of specific perspectives required, for example, such as those of consumers, technical experts, the public-at-large, academia, business, or other sectors; (iv) The need to obtain divergent points of view on the issues

---

[29] Defendants aptly point out that the final rule does not establish a strict 70/30 quota system. The final rule "establishes representational goals" and "the actual appointments are dependent on the receipt of applications and nominations of highly qualified individuals." 60 Fed. Reg. 60,957, 60,959 (Oct. 14, 2004). There is nothing in the final rule that actually requires that membership on the councils must always be 70/30. By notice filed March 15, 2006, intervenors show that the Southcentral RAC had five commercial/sport designated members and six subsistence members as of March 2006. Clerk's Docket No. 267.

before the advisory committee; and (v) The relevance of State, local, or tribal governments to the development of the advisory committee's recommendations.

41 C.F.R. pt. 102-3, subpt. B, app. A (2005).

"In considering whether a committee is fairly balanced in terms of function, courts naturally have looked first at the functions to be performed." Cargill, 173 F.3d at 336. "This does not mean, however, that 'Congress intended the "fairly balanced" requirement to entitle every interested party or group affected to representation on the Commission.'" Public Citizen v. National Advisory Comm. on Microbiological Criteria for Foods, 886 F.2d 419, 423 (D.C. Cir. 1989) (quoting National Treasury Employees Union v. Reagan, 1988 WL 21700, at *3 (D.D.C. Feb. 25, 1988) (Civ A. No. 88-186)) (emphasis in original)).

The functions of the regional advisory councils are particularized in section 3115 of ANILCA. The regional advisory councils are:

 (1) to review and evaluate proposals for regulations, policies, and management plans relating to subsistence uses of fish and wildlife;

 (2) to provide a forum for the expression of opinions and recommendations by persons interested in matters relating to the subsistence uses of fish and wildlife;

- 18 -

>   (3) to encourage local and regional participation in the decision-making process; and
>
>   (4) to prepare an annual report for the Secretary, which includes a recommendation for a strategy for the management of fish and wildlife populations within the region to accommodate subsistence uses.

16 U.S.C. § 3115(a). These functions are to be carried out in light of the statutory policy of ANILCA, which is,

> consistent with sound management principles, and the conservation of healthy populations of fish and wildlife, the utilization of the public lands in Alaska is to cause the least adverse impact possible on rural residents who depend upon subsistence uses of the resources of such lands; consistent with management of fish and wildlife in accordance with recognized scientific principles and the purposes for each unit established, designated, or expanded by or pursuant to titles II through VII of this Act, the purpose of this subchapter is to provide the opportunity for rural residents engaged in a subsistence way of life to do so....

16 U.S.C. § 3112(1).

Intervenors argue that defendants' decision to adopt a quota system of single-interest representation is not reasonably based on FACA (and thus an abuse of discretion) because the "fairly balanced" provision of FACA does not require single-interest representation. Intervenors are correct; FACA has no such requirement. But by the same token, nothing in FACA expressly