excludes single-interest representation on regional advisory councils.

Intervenors contend that the specified function of the regional advisory councils is to provide specialized knowledge about subsistence. Here, intervenors' focus is too limited. Sections 3111(5) and 3115(a)(D), in the light of section 3112(1), require that councils take a broader view of wildlife management than just subsistence concerns. Regional advisory councils must be informed about the overall, sound management of wildlife on public lands, even though the councils do not have any defined duties with respect to sport or commercial use of wildlife. Sound management of wildlife based upon scientific principles necessarily means that regional advisory councils must take account of sport and commercial uses of fish and wildlife.

Intervenors also contend that FACA does not require a potential committee member to make an arbitrary declaration of intent to represent a single interest. This is true, but FACA does not exclude such a procedure. Intervenors insist that Congress, in enacting FACA, was attempting to ensure that special interest groups did not dominate federal advisory committees. See, e.g., H.R. Rep. No. 92-1017 at 6 (1972), reprinted in 1972 U.S.C.C.A.N. 3491, 3496 ("One of the great dangers in the unregulated use of advisory committees is that special interest groups may use their membership on such bodies to promote their private concerns."). In addition, intervenors point out that FACA provides that:

> Any such legislation [establishing an advisory committee] shall —

- 20 -

. . . .

      (3) contain appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by a special interest, but will instead be the result of the advisory committee's independent judgment[.]

5 U.S.C. app. 2 § 5(b)(3). Intervenors argue that FACA's requirement that committees exercise judgment free from improper influence is contrary to defendants' attempt to create a "fair balance" of views on the regional advisory councils by establishing a mandatory quota for members who would represent a single-interest group. Intervenors contend that single-interest representation results in regional advisory councils that promote private concerns and that is contrary to FACA's intent. Intervenors also contend that defendants are arbitrarily discriminating against non-consumptive users, such as hikers and bird-watchers, by not including them in regional advisory council membership because they too may be affected by council recommendations.

      Although FACA does not require that all possible interest groups be represented on advisory committees, the court has already held that a fairly balanced regional council must include consumptive users of fish and wildlife on public lands other than subsistence users because those users are directly affected by the subsistence priority. The 70/30 balance and single-interest representation is what the Secretaries determined would provide a fair cross-section of interests and balanced membership. <u>See</u> 69 Fed. Reg. 60,957, 60,960 (response to comment as to why not an

80/20 balance). Whether that decision is adequately supported by the administrative record remains to be decided.

However, as a general proposition, the court concludes that single-interest representation would not as a matter of law conflict with any requirement of FACA. The 70/30, single-interest representation structure is one way, but not the only way, to approach the fair balance required by FACA. Intervenors make the point over and over again that defendants have created a single-interest representation system and that such a system is wrong. But in making this point, intervenors overlook the fact that if the RACs were to have only subsistence users as members, which is what intervenors seek, then the regional advisory councils appear to be single-interest bodies. For the reasons set out above, the functions of the regional advisory councils are not so limited that only subsistence users should be members.

3.   Final Rule is arbitrary and capricious

Lastly, intervenors argue that the final rule is arbitrary and capricious. Agency action violates this standard if:

> "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Ranchers Cattlemen Action Legal Fund United Stockgrowers of Amer. v. United States Dep't of Agriculture, 415 F.3d 1078, 1093 (9th Cir. 2005) (quoting City of Sausalito v. O'Neill, 386 F.3d 1186,

1206 (9th Cir. 2004)).  "Regulations are presumed to be valid[.]"
Id.  "All that is required is that the agency have 'considered the
relevant factors and articulated a rational connection between the
facts found and the choices made.'"  Id. (quoting Nat'l Ass'n of
Home Builders v. Norton, 340 F.3d 835, 841 (9th Cir. 2003)).  "The
court is not empowered to substitute its judgment for that of the
agency."  Arizona Cattle Growers' Ass'n v. United States Fish &
Wildlife, 273 F.3d 1229, 1236 (9th Cir. 2001).  The court "must
conduct a 'thorough, probing, in-depth' inquiry into the validity
of regulations."  Ranchers, 415 F.3d at 1093 (quoting Nat'l Ass'n
of Home Builders, 340 F.3d at 841).  The court's "inquiry must be
'searching and careful' to ensure that the agency decision does not
contain a clear error of judgment."  Id. (quoting City of
Sausalito, 386 F.3d at 1206).  "In performing this inquiry, the
court is not allowed to uphold a regulation on grounds other than
those relied on by the agency."  Id.  The court's review is
generally confined to "'the administrative record in existence at
the time of the decision[.]'"  The Lands Council v. Powell,
395 F.3d 1019, 1029 (9th Cir. 2005) (quoting Southwest Ctr. for
Biological Diversity v. United States Forest Serv., 100 F.3d 1443,
1450 (9th Cir. 1996)).

Defendants certified the administrative record for the
final rule as consisting of ten three-ring binders filed with the
court on May 13, 2005.[30]  Defendants expressly state that the
administrative record for the original 70/30 policy that was

---

[30]    See Clerk's Docket No. 251.

previously filed "is not part of the administrative record for the Final Rule now at issue."[31]    While the court supposes that defendants had good reasons for limiting the record they certified to the court to those proceedings subsequent to the FSB's decision not to appeal the court's January 2004 ruling,[32] the court has had concerns about the temporal shortness of the record.  The court has wondered whether some or perhaps even all of the rationale for the 70/30 structure was contained in the record of the earlier proceedings.  For the present, the court must restrict itself to the record that has been certified and the arguments that have been made on that record.

In this instance, the record that has been certified concerning the 70/30 rule is totally inadequate to explain and/or justify the regulatory choices made by the Secretaries in adopting the 70/30 rule.  Nowhere in the record do defendants explain their rationale for choosing the 70/30 structure as the means for achieving FACA compliance.  The court concedes that defendants have responded to public comments that were received on the proposed rule, but defendants had an obligation to do more than that.  They had an obligation to articulate the rationale for their regulatory choice.  The rejection or explanations offered with respect to comments do not afford the court an understanding of why defendants chose the 70/30 rule.  The foregoing is the court's

---

[31]    Defendants' Opposition to Intervenors' Memorandum on Amended Cross-Claim at 10-11, n.8, Clerk's Docket No. 263.

[32]    Clerk's Docket No. 208.

- 24 -

principal holding here. Hereinafter, we deal at some length with
the specific arguments made by the parties. The court emphasizes
this point, because on motions for reconsideration, the parties
seem to have focused upon details while overlooking the court's
above conclusion that it has not been provided with an
administrative record that discloses a rational connection between
the facts of the rule-making disagreement and the choice made by
defendants.

> a.   Defendants failed to engage in a con-
>      sidered analysis of what constitutes a
>      fairly balanced regional advisory council

Intervenors first argue that defendants' conduct was
arbitrary and capricious because defendants failed to consider a
cross-section of those directly affected, interested, and qualified
as appropriate to the nature and functions of the advisory
committees. Intervenors cite a FACA regulation governing the
establishment, renewal, or reestablishment of a discretionary
advisory committee that provides that the agency must articulate
how the advisory committee will achieve a fair balance:

> The plan will ensure that, in the selection of
> members for the advisory committee, the agency
> will consider a cross-section of those
> directly affected, interested, and qualified,
> as appropriate to the nature and functions of
> the advisory committee. Advisory committees
> requiring technical expertise should include
> persons with demonstrated professional or
> personal qualifications and experience
> relevant to the functions and tasks to be
> performed.

41 C.F.R. § 102-3.60(b)(3). Based on this regulation, intervenors
argue that defendants, in order to have engaged in a considered

- 25 -

analysis of what constitutes a fair balance, should have begun with an examination of the functions to be performed by the regional advisory councils and then proceeded to consider a cross-section of those directly affected, interested, and qualified, as appropriate to the nature and function of the councils. Because the administrative record is devoid of any evidence that defendants took these necessary steps, intervenors argue that defendants' adoption of the final rule was arbitrary and capricious.

The FACA regulation cited by intervenors has no application here. That regulation applies to the establishment of <u>discretionary</u> advisory councils. A <u>discretionary</u> advisory council is (1) a council that is authorized by Congress but the President or the agency is not directed to establish the council, or (2) a council that is established by an agency under general authority in Title 5 of the United States Code or under other general agency-authorizing statutes. 41 C.F.R. § 102.3.50(c)-(d). Here, the regional advisory councils are authorized by Congress and the Secretaries are directed to establish the regional advisory councils, which makes them non-discretionary advisory councils. See <u>id.</u> at § 102.3.50(a).

      b.   Defendants failed to consider whether a fair balance of views could be achieved by alternatives to a quota system of <u>single-interest representation</u>

Intervenors contend that defendants' adoption of the final rule was arbitrary and capricious because defendants failed to consider any alternatives to the 70/30, single-interest representation structure. "Agency actions cannot be sustained

- 26 -

where the agency has failed to consider significant alternatives." Mt. Diablo Hospital v. Shalala, 3 F.3d 1226, 1232 (9th Cir. 1993). Intervenors argue that the record in this case is completely devoid of any evidence that defendants considered whether a fair balance could be achieved by some alternative other than the 70/30, single-interest representation structure.

Although defendants entitle a two-page section of their brief "Consideration of Alternatives,"[33] nowhere in these two pages do defendants outline what alternatives they considered. Perhaps this is because defendants do not believe that they were required to consider significant alternatives. In the course of their arguments on motion for reconsideration, defendants discuss the rule-making process as outlined in 5 U.S.C. § 553. Defendants point out that nowhere does Section 553 say that the agency must consider significant alternatives. Indeed, there is no such statutory requirement. Nevertheless, the rule-making process may be flawed because the agency has failed to consider relevant factors and to articulate a rational connection between facts found and choices made.

Having reviewed the administrative record that has been certified to the court and upon which the final rule depends for validity, the court can find no evidence to suggest that defendants considered any means for achieving fairly balanced, regional advisory councils other than the 70/30, single-interest

---

[33]    Defendants' Opposition to Intervenors' Memorandum on Amended Cross-Claim at 26, Clerk's Docket No. 263.

representation structure. Given the history of the regional advisory council make-up, and the long history of antagonism between competing groups, defendants should have at least considered ways to get the necessary balance without going to a scheme that brings the confrontation between subsistence users and commercial users into such stark focus. In short, the certified administrative record fails to demonstrate that defendants gave meaningful consideration to alternatives to the 70/30 structure.

As conceded above, defendants did respond to public comments, and some of those comments did suggest alternatives to the 70/30 structure. For example, the Eastern Interior RAC suggested that RAC "applicants be able to provide a percentage breakdown of their activity and type of user group" and that the membership composition "be achieved by combining the percentages of each Council applicant rating."[34] In the "Comment and Response" section of the final rule, defendants acknowledged that this alternative had been suggested and gave the following response:

> We recognize that there are and have been individuals serving on the Councils who may participate in many types of uses (subsistence, sport and commercial) and are knowledgeable about the different interests. However, we are required by FACA to demonstrate that the Regional Advisory Councils continue to be fairly balanced in terms of points of view represented and the functions to be performed by the Council. Consequently, we have requested that people applying for Council seats declare their primary interest because it is the individual

---

[34]    Administrative Record for Final Rule, Vol. 3, Tab 21, at 3031-32.

applicant who is the most knowledgeable about
his/her viewpoints.

69 Fed. Reg. 60957, 60960.

The first sentence of that response tacitly recognizes
another way in which compliance with FACA could be established —
namely, having council members who are knowledgeable of subsistence
as well as sport and commercial uses of wildlife. That response
simply causes the court to reiterate that the record fails to
disclose why that alternative was rejected. The second sentence of
the response merely states FACA law. The third sentence of the
comment is a statement in other words of the rule that was adopted.
It is no explanation for why that rule has been adopted.

Finally, on the motions for reconsideration, plaintiffs
express concern that the court's reference to the acrimonious
history of the regulation of subsistence hunting and fishing by
federal authorities was intended to suggest to the FSB and
defendants a particular alternative. The court certainly did <u>not</u>
direct defendants to select or even to consider any particular
alternative. The court recognizes that the FSB and those who
advise it are far more knowledgeable than the court regarding the
administration of Title VIII of ANILCA. The court would not
presume to suggest a result or the consideration of a particular
alternative to defendants, even though the court is of the view
that there are several very obvious alternatives that might have
been considered. As already stated, the court's primary concern is
that defendants appear not to have employed the vast experience
they do have to consider something other than a 70/30, single-

- 29 -

interest form of council membership.   It may be impossible to completely satisfy all of the interests involved here; but if ever there were a situation that called for "thinking outside the box," surely this is it.   The differences between subsistence users, commercial users, and sport users of limited wildlife resources call for imaginative thinking.   But what shall be done to effect FACA compliance is for defendants to consider, decide, and justify.

      c.   Defendants' action is not supported by findings in the record

Intervenors contend that defendants failed to support the changes to the regional advisory council membership structure with substantial evidence or specific findings in the record.  Review of the final rule in this instance is not governed by the substantial evidence standard.   The substantial evidence standard applies "in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).   Sections 556 and 557 apply when an evidentiary hearing is held.  There was no evidentiary hearing held in connection with the rule-making at issue here.

      d.   Defendants improperly modeled the 70/30 quota system on the defunct Stevens Amendment

"Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider...."  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1984).  Intervenors argue that it was improper for defendants to

- 30 -

consider the Stevens Amendments[35] because Congress understood that changes to the regional advisory council structure could be made only through legislation.    Intervenors contend that the final rule essentially implements the repealed amendments and, in doing so, defeats Congress' intent that changes to the regional advisory councils would take place only if the State of Alaska came back into conformity with Title VIII of ANILCA.

In its June 12, 2006, order, the court stated that:

> Nowhere in the administrative record that has been certified to the court are the Stevens Amendments mentioned.[36]

On motion for reconsideration, plaintiffs correctly point out that the foregoing statement is wrong.    In fact, intervenors mentioned

---

[35]    The Stevens Amendments were adopted by Congress in 1997. Under the Stevens Amendments, each regional advisory council was to be composed of ten members, four of whom would be selected from nominees submitted by tribal councils in the region and six of whom would be selected from nominees submitted by local governments and local advisory councils.    See Department of the Interior and Related Agencies Appropriations Act, Pub. L. No. 105-83, 111 Stat. 1543 (1997).    Of the six council members selected from nominees submitted by local governments and local advisory councils, three were to be subsistence users residing in the area and three were to be sport or commercial users residing in the area.    Id.    The Stevens Amendments were contingent upon (1) the Alaska Legislature placing a constitutional amendment on the ballot that would allow the state legislature to provide a rural subsistence priority, (2) the enactment of a state subsistence law that provided for the definition, preference, and participation specified in sections 803, 804, and 805 of ANILCA, and (3) approval of the ANILCA "package" by the Alaska voters in November 1998.    Because none of these events occurred, the Stevens Amendments lapsed.

[36]    Order re Motion for Summary Judgment at 28, Clerk's Docket No. 269.

the Stevens Amendments in their written comments to the proposed rule.[37]

The court's misstatement in the foregoing regard gets plaintiffs nowhere. The record that is before the court fails totally to demonstrate that defendants selected the 70/30 single interest form of council membership because of the Stevens Amendments. The Secretaries did not mention the Stevens Amendments when they set forth their reasons for rule-making. See 69 Fed. Reg. 60957-62. Because there is no evidence that the Secretaries relied on the Stevens Amendments, plaintiffs' and intervenors' arguments in this regard fail.

Moreover, there is no statutory basis for intervenors' argument that congressional legislation is necessary to effect a change in the structure of the regional advisory councils. Expiration of the Stevens Amendments left Title VIII as it was, with the Secretaries having regulatory authority to implement 16 U.S.C. § 3115; and even if the Secretaries had considered the Stevens Amendments, it would not have been improper for them to have done so. As the court has already observed, a single-interest, 70/30 rule (which was the essence of the Stevens Amendments) is one possible approach to FACA compliance.

---

[37]    See Administrative Record for Final Rule, Vol. 5, Tab 36, at 4983-85.

- 32 -

e.  Targeting sport and commercial users over
    other non-consumptive users was arbitrary
    and capricious

Finally, intervenors argue that it was arbitrary and capricious to include only sport and commercial users while excluding all other consumptive users and non-consumptive users. The court has already rejected the argument that only subsistence users of resources are appropriate regional advisory council members.  As to the broader argument that others are inappropriately excluded, FACA does not require that every point of view be represented on an advisory committee in order for the committee to be fairly balanced.  Because the final rule must be reconsidered by the Secretaries, intervenors are free to argue, and the Secretaries should consider, other alternatives.

## Remedy

In the conclusion of the June 12, 2006, order,[38] the court directed the clerk to enter judgment in favor of intervenors and against defendants, holding the final 70/30 rule void, enjoining defendants from further implementation of the 70/30 rule, and requiring further rule-making proceedings.  On motion for reconsideration, plaintiffs argue that such remedy is manifestly unjust because defendants are halfway through the annual RAC member selection process.  Defendants argue that employing the previous regulatory selection process will put defendants in violation of FACA because, without the 70/30 rule, the new RAC members would

---

[38]  Order re Motion for Summary Judgment at 29, Clerk's Docket No. 269.

- 33 -

have been selected in a fashion not aimed at achieving a fair
balance of views on the councils. Based upon <u>Paulsen v. Daniels</u>,
413 F.3d 999, 1008 (9th Cir. 2005), plaintiffs and defendants argue
that equity may sometimes require that an invalid rule stay in
place while the rule-making process is reexamined by defendants.

On reconsideration, and in consideration of defendants'
motion to amend judgment, the court concludes that defendants'
concerns are well-founded. If the 70/30 rule is voided, and
defendants enjoined from further implementing it, RAC members will
have to be selected pursuant to 36 C.F.R. § 242.11(b) and 50 C.F.R.
§ 100.11(b) as they existed before adoption of the final rule.
Those regulations did not meet FACA requirements. In its order of
January 16, 2004, the court held that:

> In light of the national policies of ANILCA
> and the functions served by regional advisory
> councils, a council comprised of only
> subsistence users is not fairly balanced.[39]

Thus, the court's June 12, 2006, order and its judgment thereon
place defendants between a rock and a hard place.

The court has not concluded that the 70/30 rule for RAC
membership is contrary to law. The court's holding is that
defendants have not submitted to the court an administrative record
that provides a rationale for that rule. The court concludes that
it would be manifestly unjust to require defendants to remain in
violation of FACA rather than continuing the RAC member selection
process under the 70/30 rule. Again, the 70/30 rule is not

---

[39]    Order re Motions for Summary Judgment at 57, Clerk's
Docket No. 208.

contrary to law; it simply has not been adequately justified at this point.

Conclusion

Intervenors' motion for summary judgment on their amended cross-claim is granted. Although not void as a matter of law, the final rule adopted by the defendants for selection of RAC members in compliance with FACA is arbitrary and capricious because the record underlying the adoption of that rule fails to provide a rationale for the adoption of the rule. To the extent not granted by the terms of this order, intervenors' motion is denied.

The clerk of court shall enter an amended judgment in favor of intervenors and against defendants as follows:

The court declares that the final rule that imposed a 70/30 membership structure for the regional advisory councils is arbitrary and capricious for lack of an administrative record providing the rationale for the adoption of that final rule. However, defendants may employ the 70/30 rule for the 2006 year vacancies. As to vacancies occurring after calendar year 2006, defendants and all others acting in concert with them are enjoined and restrained from further implementation of the 70/30 final rule and regional advisory council charter provisions based thereon.

- 35 -

Defendants shall promptly undertake further administrative proceedings consistent with the court's amended order on motion for summary judgment dated August 7, 2006.

The court retains jurisdiction over the amended complaint in intervention. Proceedings in this case are stayed pending further administrative proceedings by defendants as prescribed by this judgment. At any time and for any appropriate reason — including the court's prohibition of the implementation of the 70/30 rule for regional advisory council membership selection after 2006 — any party may petition to have these proceedings reopened.

DATED at Anchorage, Alaska, this <u>7th</u> day of August, 2006.

<u>/s/ H. Russel Holland</u>
United States District Judge

- 36 -