(3) By fax to the Docket Management Facility at 202–493–2251.

(4) Electronically through the Web site for the Docket Management System at *http://dms.dot.gov*.

The Docket Management Facility maintains the public docket for the rulemaking. Comments and material received from the public will become part of this docket and will be available for inspection or copying at room PL–401, located on the Plaza level of the Nassif Building at the same address between 9 a.m. and 5 p.m., Monday through Friday, except Federal holidays. You may electronically access the public docket by performing a "Simple Search" for docket number 25767 on the internet at *http://dms.dot.gov*.

Electronic forms of all comments received into any of our dockets can be searched by the name of the individual submitting the comment (or signing the comment, if submitted on behalf of an association, business, labor unit, etc.) and is open to the public without restriction. You may review the Department of Transportation's complete Privacy Act Statement in the **Federal Register** published on April 11, 2000 (65 FR 19477–78), or you may visit *http://dms.dot.gov/*.

**FOR FURTHER INFORMATION CONTACT:** For further information concerning this notice and the public meeting, contact Commander Gustav Wulfkuhle, Chief Enforcement Branch, Ninth Coast Guard District, Cleveland, Ohio at (216) 902–6091. If you have any questions on viewing or submitting material to the docket, call Renee V. Wright, Program Manager, Docket Operations, telephone 202–493–0402.

**SUPPLEMENTARY INFORMATION:**

**Public Meetings**

The Coast Guard will hold three additional public meetings as follows: Monday, October 30, 2006 in Rochester, NY; Wednesday, November 1, in the Milwaukee WI/Chicago, IL area; and Friday, November 3, in Charlevoix, MI. These meetings will be held to take comments regarding the proposed Safety Zones; U.S. Coast Guard Water Training Areas, Great Lakes, published on August 1, 2006, in the **Federal Register** at 71 FR 43402. Specific times, locations and additional information for the public meetings will be announced in a subsequent notice in the **Federal Register**.

The Coast Guard encourages interested persons to submit written data, views, or comments. Persons submitting comments should please include their name and address and identify the docket number (USCG–2006–2567). You may submit your comments and material by mail, hand delivery, fax or electronic means to the Docket Management Facility at the address under **ADDRESSES**.

**Regulatory History**

On August 1, 2006, the Coast Guard published a notice of proposed rulemaking (NPRM)(71 FR 43402) to establish permanent safety zones throughout the Great Lakes to conduct live fire gun exercises. The initial comment period for this NPRM ended on August 31, 2006. In response to public requests, the Coast Guard re-opened the comment period on this NPRM. (71 FR 53629, September 12, 2006) Re-opening the comment period from September 12, 2006 to November 13, 2006, provides the public more time to submit comments and recommendations. In addition, the Coast Guard announced on September 19, 2006 it would hold public meetings in Duluth, MN; Grand Haven/Spring Lake, MI; Port Huron/Marysville, MI; and Cleveland, OH to discuss issues related to the proposed permanent safety zones. See, 71 FR 54792. The times and locations of these four meetings were announced in the **Federal Register** on September 27, 2006. (71 FR 56420)

This document announces the decision to include three additional meetings to the list of currently scheduled public meetings. These added meetings will be held as follows: Monday, October 30, 2006 in Rochester, NY; Wednesday, November 1, in the Milwaukee, WI/Chicago, IL area; and Friday, November 3, in Charlevoix, MI. Specific times, locations and additional information for the public meetings will be announced in a subsequent notice in the **Federal Register**.

**Background and Purpose**

These safety zones are necessary to protect vessels and people from hazards associated with live fire gun exercises. Such hazards include projectiles that may ricochet and damage vessels and/or cause death or serious bodily harm. The thirty-four zones will be located throughout the Great Lakes in order to accommodate 56 separate Coast Guard units. The proposed safety zones are all located at least three nautical miles from the shoreline.

**Procedural**

The meetings are open to the public. Please note that the meetings may close early if all business is finished. If you are unable to attend, you may submit comments to the Docket Management Facility at the address under **ADDRESSES** by November 13, 2006.

**Information on Services for Individuals With Disabilities**

If you plan to attend the public meeting and require special assistance, such as sign language interpretation or other reasonable accommodations, please contact us as indicated in **FOR FURTHER INFORMATION CONTACT**. Requests for special assistance should reach the Coast Guard within seven (7) business days of the meeting.

Dated: October 3, 2006.

**John E. Crowley, Jr.,**

*Rear Admiral, U.S. Coast Guard, Commander, Ninth Coast Guard District.*

[FR Doc. E6–16903 Filed 10–11–06; 8:45 am]

**BILLING CODE 4910–15–P**

---

**DEPARTMENT OF AGRICULTURE**

**Forest Service**

**36 CFR Part 242**

**DEPARTMENT OF THE INTERIOR**

**Fish and Wildlife Service**

**50 CFR Part 100**

**Subsistence Management Regulations for Public Lands in Alaska; Federal Subsistence Regional Advisory Council Membership**

**AGENCIES:** Forest Service, Agriculture; Fish and Wildlife Service, Interior.

**ACTION:** Request for comments.

---

**SUMMARY:** This notice solicits written comments and suggestions on the membership qualifications for Federal Subsistence Regional Advisory Councils established under Subsistence Management Regulations. The Federal Advisory Committee Act (FACA) requires that advisory councils be constituted with a balanced membership. The current Federal regulations set a goal of 70 percent subsistence users to 30 percent sport and commercial users on the Federal Subsistence Regional Advisory Councils. This notice is the first step in an administrative action with respect to that regulation, made necessary because of an order entered by the U.S. District Court for Alaska. Because the U.S. District Court has enjoined application of the current 70/30 percent goal after 2006, it is necessary to give further reconsideration to alternative methods for assuring balance in membership for Regional Advisory Councils in time to make any decision applicable to the 2007 appointments. Therefore, no



extension of the review deadline will be granted.

**DATES:** The Federal Subsistence Board must receive your written public comments and suggestions on this proposed rule no later than November 13, 2006.

**ADDRESSES:** If you wish to comment, you may submit your comments and materials by any one of several methods:

1. *E-mail: Subsistence@fws.gov.* See **SUPPLEMENTARY INFORMATION** for file formats and other information.

2. *U.S. mail or hand-delivery:* Office of Subsistence Management, 3601 C Street, Suite 1030, Anchorage, AK 99503.

3. You may submit comments via the Federal E-Rulemaking Portal at *http://www.regulations.gov.*

**FOR FURTHER INFORMATION CONTACT:** Chair, Federal Subsistence Board, c/o U.S. Fish and Wildlife Service, Attention: Pete Probasco, Office of Subsistence Management; (907) 786–3888. For questions specific to National Forest System lands, contact Steve Kessler, Regional Subsistence Program Leader, USDA, Forest Service, Alaska Region, (907) 786–3592.

**SUPPLEMENTARY INFORMATION:** Electronic submission of comments to *Subsistence@fws.gov* is preferred. You may submit comments and suggested alternatives and other data as Adobe Acrobat (PDF) or MS Word files, avoiding the use of any special characters and any form of encryption.

**Background**

Title VIII of the Alaska National Interest Lands Conservation Act (ANILCA) (16 U.S.C. 3111–3126) requires that the Secretaries of the Interior and Agriculture implement a program to grant a preference for subsistence uses of fish and wildlife resources on Federal public lands and waters, unless the State of Alaska enacts and implements laws of general applicability that are consistent with ANILCA and that provide for the subsistence definition, preference, and participation specified in Sections 803, 804, and 805 of ANILCA. The State implemented a program that the Department of the Interior previously found to be consistent with ANILCA. However, in December 1989, the Alaska Supreme Court ruled in *McDowell* v. *State of Alaska* that the rural preference in the State subsistence statute violated the Alaska Constitution. The Court's ruling in *McDowell* required the State to delete the rural preference from the subsistence statute and, therefore, negated State compliance with ANILCA. The Court stayed the effect of the decision until July 1, 1990.

As a result of the *McDowell* decision, the Department of the Interior and the Department of Agriculture (Departments) assumed, on July 1, 1990, responsibility for implementation of Title VIII of ANILCA on Federal public lands and waters. On June 29, 1990, the Temporary Subsistence Management Regulations for Public Lands in Alaska were published in the **Federal Register** (55 FR 27114). With the State unable to create a program in compliance with Title VIII by May 29, 1992, the Departments published a final rule in the **Federal Register** (57 FR 22940). On January 8, 1999 (64 FR 1276), the Departments published a final rule to extend jurisdiction to include certain waters in which there exists a Federal reserved water right. This amended rule became effective October 1, 1999, and conformed the Federal Subsistence Management Program to the Ninth Circuit's ruling in *Alaska* v. *Babbitt*.

In Subparts A, B, and C of these regulations, as revised January 8, 1999 (64 FR 1276), the Departments established a Federal Subsistence Board (Board) to administer the Federal Subsistence Management Program. The Board's composition consists of a Chair appointed by the Secretary of the Interior with concurrence of the Secretary of Agriculture; the Alaska Regional Director, U.S. Fish and Wildlife Service; the Alaska Regional Director, U.S. National Park Service; the Alaska State Director, U.S. Bureau of Land Management; the Alaska Regional Director, U.S. Bureau of Indian Affairs; and the Alaska Regional Forester, USDA Forest Service. Through the Board, these agencies participate in the development of the Federal Subsistence Management Regulations (Subparts A, B, C, and D).

**Federal Subsistence Regional Advisory Councils**

Pursuant to the Record of Decision, Subsistence Management Regulations for Federal Public Lands in Alaska, April 6, 1992, and the Subsistence Management Regulations for Federal Public Lands in Alaska, 36 CFR 242.11 (1999) and 50 CFR 100.11 (1999), and for the purposes identified therein, Alaska is divided into 10 subsistence resource regions, each of which is represented by a Federal Subsistence Regional Advisory Council. The Regional Councils provide a forum for the residents of the particular region with personal knowledge of local conditions and resource requirements to have a meaningful role in the subsistence management of fish and wildlife on Alaska Federal public lands and waters.

The Board reviews applications for membership on the Regional Councils and makes recommendations to the Secretaries on the appointments to the Councils. The appointments themselves are then made by the Secretary of the Interior with the concurrence of the Secretary of Agriculture. The Regional Council members represent varied geographical areas, cultures, interests, and resource users within each region. A Regional Council member must be a resident of the region in which he or she is appointed and be knowledgeable about the region and subsistence uses of the Federal public lands and waters therein.

In 1998, Safari Club International and others filed suit in the U.S. District Court for the District of Alaska. This suit, among other things, challenged the balance of membership on the Regional Councils required by the Federal Advisory Committee Act (FACA) of 1972, Public Law 92–463, 86 Stat. 770 (*Safari Club* v. *Demientieff,* No. A98–0414–CV). In the meantime, the Secretary of the Interior, as part of a national review of advisory councils and in response to inquiries related to the Federal Subsistence Regional Advisory Councils in Alaska, requested the Board examine its process for selecting nominees, and "see that" groups such as "residents of non-rural areas, commercial users of fish and wildlife resources and sportsmen are represented on the RACs." Based on Board recommendations following that in-depth examination, the Secretary of the Interior, with concurrence of the Secretary of Agriculture, in 2002 increased the size of nine of the Regional Councils; established the goal of making appointments to the Regional Council so as to achieve, where possible, a representation goal of 70 percent subsistence users and 30 percent sport/commercial users; revised the application/evaluation/selection process and forms; and approved a 3-year implementation period (67 FR 30559, May 7, 2002).

The Native Village of Venetie Tribal Government *et al.* were permitted to intervene in the Safari Club case and to challenge the 70/30 ratio representational goals established by the Secretaries. In January 2004, the U.S. District Court for Alaska entered an order recognizing that with respect to the Regional Councils "* * * a council comprised of only subsistence users is not fairly balanced. Subsistence users are not the only persons directly affected by regional advisory council recommendations and subsistence users

EXHIBIT  1
Page  2  of  4

Federal Register/Vol. 71, No. 197/Thursday, October 12, 2006/Proposed Rules    60097

are not the only persons who might be interested in the management of fish and wildlife on Federal lands * * *. Non-subsistence users of fish and wildlife are directly affected by management of fish and wildlife for subsistence uses and have a legitimate interest in the proper scientific management of same * * *. While *all* points of view and all persons directly affected are not entitled to representation on a FACA committee, in this instance, a cross-section of those affected by fish and wildlife management on Federal public lands must be, in a reasonable and fair manner, afforded representation on regional advisory councils."

In ruling on the cross-claim of the Native Village of Venetie, the Court also invalidated the Secretaries' policy of a goal of a 70/30 (subsistence users/sport and commercial users) membership representation for failure to procedurally comply with the provisions of the Administrative Procedure Act found at 5 U.S.C. 553, and found that the policy should have been put before the public for comment in a rulemaking process. The District Court also ordered that the Secretaries promptly initiate and conclude a rulemaking to promulgate an appropriate Regional Council regulation consistent with FACA after compliance with 5 U.S.C. 553. The Secretaries initiated action with a proposed rule published on April 15, 2004 (69 FR 19964), and received testimony on the proposed rule at a May 2004 public hearing.

On October 14, 2004, the Secretaries published a final rule in the **Federal Register** (69 FR 60957). The underlying purpose of the change to § ___.11(b), while complying with the District Court's order, was to ensure continued compliance with both the fairly balanced representational requirements of FACA and the requirements and purposes of Title VIII of ANILCA in the appointments to the Regional Councils. In the change, the Secretaries recognized that some persons with interests other than subsistence uses are entitled under FACA to be represented on the Regional Councils, while recognizing that Congress intended in Title VIII for rural Alaska residents "who have personal knowledge of local conditions and requirements * * * to have a meaningful role in the management of fish and wildlife and of subsistence uses on public lands in Alaska," and that Congress also intended that "large urban population centers" not be allowed to dominate the Regional Council system. This rule established the 70/30 representational goal in the change to § ___.11(b). The purpose was to assure the appropriate representation and meaningful majority role for rural Alaska residents, while providing an appropriate representation for the interests of nonrural residents and nonsubsistence users.

The interveners then challenged the final rule, and on August 8, 2006, the Court declared the 70/30 membership structure to be arbitrary and capricious because the Secretaries and the Board had failed to adequately explain the analysis of the relevant factors and to articulate their rationale in adopting the final rule. That order stated that "the court has not concluded that the 70/30 rule for RAC membership is contrary to law. The court's holding is that defendants have not submitted to the court an administrative record that provides a rationale for that rule."

The purpose of the process that the Secretaries and the Board are undertaking, in this notice, is to fulfill the requirements of the district court's August 8, 2006, decision, to lay out a full administrative record, display a complete assessment of alternatives considered, and provide a fuller explanation for the option selected for providing a balanced membership on the Regional Councils.

The Regional Councils must have a balanced membership in accordance with FACA and the court's rulings. This necessitates that representatives from groups such as commercial users of fish and wildlife resources and sportsmen must be sitting as members of each Council. In order to implement that balanced membership, the Secretaries and the Board must have some method of identifying which interest or interests a prospective Council member would represent. Self-identification by an applicant is the best way to obtain that information. Many individuals using the fish and wildlife resources of Alaska do so within different user groups. Subsistence fishermen frequently hold commercial fishing licenses; commercial fishermen may also be sport fishermen or hunters. Sport hunters may have personal use fishing permits, while hunting guides may also hold sport fishing licenses. In almost all cases, however, an individual usually holds certain convictions and beliefs that would cause him or her to represent one of his or her interests more strongly than another interest when making recommendations on potential regulations or policies that would impact his or her use of the resource. For that reason, the Secretaries and the Board requested that each applicant for a Regional Council identify a primary interest. In this way, the Board can identify and recommend to the Secretaries applicants who would provide a balanced membership for each Regional Council.

Even though FACA requires a membership balanced in viewpoints, the purpose of the Regional Councils is to provide Alaska residents "who have personal knowledge of local conditions and requirements * * * to have a meaningful role in the management of fish and wildlife and of subsistence uses on public lands in Alaska." The Secretaries believe that, in order to fulfill this mandate, subsistence interests must constitute a majority of members on each Regional Council. Likewise, since sport and commercial users are also entitled to be represented (where such qualified individuals may be present), a Regional Council composed of only subsistence users is not a Regional Council that meets the requirements of FACA. The Secretaries and the Board, in adopting the current regulations, therefore, considered subsistence, sport, and commercial membership ratios of 60/40, 70/30, 80/20, and 90/10 percent, respectively.

The Secretaries discarded the 90/10 ratio because a single individual on a 10-member Regional Council could not adequately represent both sport and commercial interests and could easily be intimidated by the remaining 90 percent of the Council. Council meetings are routinely held in remote villages and some Council members have difficulty attending meetings, particularly if they are engaged in harvesting fish or wildlife resources at the time or are weathered out. If that is the single person representing sport and commercial users when that happens, then there is no representation of those viewpoints. The Board also discarded the 60/40 ratio. A Council with a 60/40 ratio with one or two members representing subsistence missing from the meeting could easily be dominated by sport and commercial interests. The same domineering situation could exist with an 80/20 membership ratio if one of the sport or commercial representatives were absent. A 70/30 membership ratio provides a majority representation for subsistence users without domination by sport or commercial interests, but the 30 percent membership would also allow both sport and commercial interests to be meaningfully represented. All Regional Council members are still expected to examine each proposal, policy, or plan and develop Regional Council recommendations based on recognized principles of fish and wildlife conservation, satisfaction of subsistence needs, and substantial evidence,



consistent with Title VIII of ANILCA, and are not expected to act as only single interest representatives.

The Regional Councils were first constituted with a 70/30 membership representation goal before their winter 2004 meetings. Since then, the 10 Regional Councils have held 50 regularly scheduled meetings. In almost every instance, these meetings have occurred without rancor or hostility among represented interests. Many members have expressed gratitude for the opportunity to associate and learn from members representing other interests. Part of the success of the balanced Councils results from the fact that all these interests depend on the same fish and wildlife resources, with conservation the main concern.

By way of this notice, the Board and Secretaries are requesting your comments on the existing 70/30 representational membership goal that is currently in regulation for the Regional Councils. This membership requirement is set forth at 36 CFR 242.11(b) and 50 CFR 100.11(b). Your suggestions for any modifications to the existing 70/30 goal are also sought. The Board and Secretaries also invite you to submit any suggested alternative ideas for providing a balanced membership that complies with FACA, while still meeting the intent of ANILCA. Following the close of the comment period as identified in the DATES section, the public comments, suggestions, and identified alternatives will be presented to the Regional Councils during their winter 2007 meetings. This procedure will allow both the Regional Councils and the public to have an opportunity to present ideas and testimony related to the issue of a methodology for achieving balanced Regional Councils. This is not required by Section 805(c) of ANILCA and any recommendations the Councils may make are not recommendations subject to Section 805(c). Any suggestions, alternatives, or recommendations from the Regional Councils will then be presented to the Federal Subsistence Board at its May 2007 meeting. There will also be another opportunity for the public to submit suggestions or alternatives at this Board meeting. Following public testimony and Council recommendations, the Board will deliberate various options and recommend a course of action to the Secretaries. A formal rulemaking process would follow, if necessary. The recommendation may also be to make no changes to the current regulations but merely to offer further explanation of that rule.

*Drafting Information*

William Knauer drafted this notice under the guidance of Pete Probasco of the Office of Subsistence Management, Alaska Regional Office, U.S. Fish and Wildlife Service, Anchorage, Alaska. Chuck Ardizzone, Alaska State Office, Bureau of Land Management; Greg Bos, Carl Jack, and Jerry Berg, Alaska Regional Office, U.S. Fish and Wildlife Service; Sandy Rabinowitch and Nancy Swanton, Alaska Regional Office, National Park Service; Warren Eastland and Dr. Glenn Chen, Alaska Regional Office, Bureau of Indian Affairs; and Steve Kessler, Alaska Regional Office, USDA-Forest Service, provided additional guidance.

**Authority:** 16 U.S.C. 3, 472, 551, 668dd, 3101–3126; 18 U.S.C. 3551–3586; 43 U.S.C. 1733.

Dated: September 19, 2006.

**Peter J. Probasco,**
*Acting Chair, Federal Subsistence Board.*

**Steve Kessler,**
*Subsistence Program Leader, USDA-Forest Service.*

[FR Doc. 06–8594 Filed 10–11–06; 8:45 am]
**BILLING CODE 3410–11–P; 4310–55–P**

## ENVIRONMENTAL PROTECTION AGENCY

**40 CFR Part 52**

**[Docket No. EPA–R02–OAR–2006–0685, FRL–8230–1]**

### Approval and Promulgation of Implementation Plans; New York; Motor Vehicle Enhanced Inspection and Maintenance Program

**AGENCY:** Environmental Protection Agency (EPA).
**ACTION:** Proposed rule.

**SUMMARY:** The EPA is proposing to approve a revision to the State Implementation Plan (SIP) for New York's motor vehicle enhanced inspection and maintenance (I/M) program which includes the adoption of a statewide On-Board Diagnostic (OBD) program. New York has made revisions to Title 6 of the New York Codes, Rules and Regulations (NYCRR), Part 217, "Motor Vehicle Enhanced Inspection and Maintenance Program Requirements," and Title 15 NYCRR Part 79, "Motor Vehicle Inspection Regulations," to comply with EPA regulations and to improve performance of its I/M program. The intended effect of this action is to maintain consistency between the State-adopted rules and the federally approved SIP and to approve a control strategy that will result in emission reductions that will help achieve attainment of the national ambient air quality standard for ozone.

**DATES:** Comments must be received on or before November 13, 2006. Public comments on this action are requested and will be considered before taking final action.

**ADDRESSES:** Submit your comments, identified by Docket ID No. EPA–R02–OAR–2006–0685, by one of the following methods:
• *http://www.regulations.gov:* Follow the on-line instructions for submitting comments.
• E-mail: *Werner.Raymond@epa.gov.*
• Fax: 212–637–3901.
• Mail: Raymond Werner, Chief, Air Programs Branch, Environmental Protection Agency, Region 2 Office, 290 Broadway, 25th Floor, New York, New York 10007–1866.
• Hand Delivery: Raymond Werner, Chief, Air Programs Branch, Environmental Protection Agency, Region 2 Office, 290 Broadway, 25th Floor, New York, New York 10007–1866. Such deliveries are only accepted during the Regional Office's normal hours of operation. The Regional Office's official hours of business are Monday through Friday, 8:30 a.m. to 4:30 p.m. excluding Federal holidays

*Instructions:* Direct your comments to Docket ID No. EPA–02–OAR–2006–0685. EPA's policy is that all comments received will be included in the public docket without change and may be made available online at *http://www.regulations.gov,* including any personal information provided, unless the comment includes information claimed to be Confidential Business Information (CBI) or other information whose disclosure is restricted by statute. Do not submit information that you consider to be CBI or otherwise protected through www.regulations.gov or e-mail. The www.regulations.gov Web site is an "anonymous access" system, which means EPA will not know your identity or contact information unless you provide it in the body of your comment. If you send an e-mail comment directly to EPA without going through www.regulations.gov your e-mail address will be automatically captured and included as part of the comment that is placed in the public docket and made available on the Internet. If you submit an electronic comment, EPA recommends that you include your name and other contact information in the body of your comment and with any disk or CD–ROM you submit. If EPA cannot read your comment due to technical difficulties and cannot contact you for clarification,

EXHIBIT 1
Page 4 of 4