IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

SAFARI CLUB INTERNATIONAL, et al.,

Plaintiffs,

vs.

MITCH DEMIENTIEFF, Chairman, Federal Subsistence Board, et al.,

Defendants,

and

NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, et al.,

Defendant-Intervenors.

No. 3:98cv0414-HRH

AMENDED ORDER

Motion for Summary Judgment

Intervenors move for summary judgment on their amended cross-claim.[1] This motion is opposed.[2] Oral argument has not been requested and is not deemed necessary.

By order of June 12, 2006,[3] the court granted intervenors' motion for summary judgment and entered judgment on

[1] Clerk's Docket No. 258.

[2] Clerk's Docket Nos. 263 and 264.

[3] Clerk's Docket No. 269.

Case 3:98-cv-00414-HRH Document 299 Filed 08/22/2006 Page 2 of 36

intervenors' amended cross-claim against defendants. By order of August 7, 2006,[4] the court withdrew the foregoing order and vacated its judgment based upon defendants' and plaintiffs' motions for reconsideration[5] and defendants' motion to amend judgment.[6] The court now enters its amended order, again granting intervenors' motion for summary judgment on its amended cross-claim against defendants.

<u>Background</u>

Plaintiffs are Safari Club International, the Alaska Chapter of Safari Club International, Alaska's Kenai Peninsula Chapter of Safari Club International, Kenai Peninsula Outdoors Coalition, and Jerry Jacques. Defendants are Mitch Demientieff, Chairman of the Federal Subsistence Board; Dirk Kempthorne, Secretary of the Interior;[7] and Mike Johanns, Secretary of Agriculture. Intervenors are the Native Village of Venetie Tribal Council, Gideon James, Ninilchik Traditional Council, Alakanuk Traditional Council, and Nunam Iqua Traditional Council.

This case began as a challenge by plaintiffs to the make-up of the regional advisory councils that report to the Federal Subsistence Board (FSB), which enjoys delegated authority from the Secretaries for purposes of regulating subsistence hunting and

---

[4] Clerk's Docket No. 298.

[5] Clerk's Docket Nos. 270 and 271.

[6] Clerk's Docket No. 277.

[7] Dirk Kempthorne has been substituted for his predecessor as Secretary of the Interior pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure.

fishing on public lands[8] pursuant to the Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C. §§ 3101-3233.[9] Section 3115 of ANILCA, which sets forth the administrative structure for implementing the subsistence priority established in section 3114, expressly calls for the establishment of regional advisory councils (RACs). In 1993, the Secretaries determined that Alaska should be divided into ten subsistence resource regions, each of which was to be represented by a regional advisory council.

Section 3115(a) of ANILCA requires council members to be residents of the region they are appointed to represent. In addition to the residency requirement of section 3115(a), the Secretaries' regulations at all times have required that:

> A Regional Council member must ... be knowledgeable about the region and subsistence uses of the public lands therein.

50 C.F.R. § 100.11(b)(1).

Starting in January of 2002, the FSB, at the request of the Interior Department, began a review of the regional advisory council membership process, which was prompted by concern that the regional advisory councils might be out of compliance with the Federal Advisory Committee Act (FACA), 5 U.S.C. app. 2 §§ 1-16. The FSB's final recommendations to the Interior Department included changing the size of seven of the regional advisory councils to ten

---

[8] 16 U.S.C. § 3102(3).

[9] Plaintiffs also challenged a host of customary and traditional hunting and fishing use determinations by the FSB, but that portion of the case has been resolved and is not at issue here.

members and three to thirteen members; having designated seats on each council of 70% subsistence users and 30% sport and commercial users; and adding to the nomination process questions regarding the applicant's knowledge of fish and wildlife resources, subsistence uses, customs, traditions, recreational/sport uses, and commercial uses.[10]  On September 13, 2002, the FSB chairman was instructed "to implement the recommendations proposed in the Board's report without delay,"[11] which the FSB did for the 2003 membership selection process.

Plaintiffs supported the implementation of the 70/30 policy because they had challenged the membership requirements for regional advisory councils on the ground that the councils did not comply with the "fairly balanced" requirement of FACA.  Intervenors took an opposite view.  Intervenors, who entered the case after defendants decided to implement the 70/30 policy, opposed the policy, contending that the regional advisory councils did not have to comply with FACA.  But even if the councils had to comply with FACA, intervenors contended that the councils, as they then existed, did comply with FACA and the 70/30 policy was thus unnecessary for FACA compliance.  Intervenors also asserted that defendants were required to engage in notice-and-comment rule-making as set forth in the Administrative Procedure Act (APA),

---

[10]    See Letter from Mitch Demientieff to J. Steven Griles and attached report, Administrative Record for Venetie Cross-Claim, Tab 23, at 477-505.

[11]    Letter from J. Steven Griles to Mitch Demientieff, Administrative Record for Venetie Cross-Claim, Tab 24, at 506.

Case 3:98-cv-00414-HRH Document 299 Filed 08/02/2006 Page 5 of 36

5 U.S.C. § 553, but had failed to do so prior to implementing the 70/30 policy.

Plaintiffs' and intervenors' claims as to the membership requirements for regional advisory councils were submitted to the court on motions for summary judgment. By order of January 16, 2004,[12] the court denied in part and granted in part plaintiffs' and intervenors' motions for summary judgment. The court determined that the regional advisory councils are advisory bodies subject to FACA and that councils which exclude the viewpoints of non-subsistence users of public lands do not meet FACA's "fairly balanced" requirement. However, the court enjoined the Secretaries from implementing the 70/30 policy because the plan was not adopted in compliance with the rule-making requirements of the APA. On January 21, 2004, judgment[13] was entered in favor of intervenors and against defendants. The judgment ordered defendants to:

> promptly undertake the initiation of appropriate rule-making proceedings for purposes of reconsidering membership qualifications (quotas) for regional advisory councils. Defendants shall promptly undertake the adoption and implementation of an appropriate regional advisory council membership regulation consistent with FACA after compliance with 5 U.S.C. § 553.[[14]]

At its work session on January 27, 2004, in an executive session, the FSB decided not to appeal the court's decision and to

---

[12] Clerk's Docket No. 208.

[13] Clerk's Docket No. 209.

[14] Id. at 1.

Case 3:98-cv-00414-HRH Document 299 Filed 08/02/2006 Page 6 of 36

proceed promptly with rule-making.[15] Because these decisions were made in executive session, there is no record of what discussion, if any, was had about the substance of a new proposed rule.

At their winter meetings in February and March of 2004, the regional advisory councils were informed that a proposed rule adopting the 70/30 structure would be published soon. The councils were advised that the comment period for the proposed rule would be prior to their fall meetings, but they were also told that they could offer comment on the proposed rule at their winter meetings (before the proposed rule was actually published) or that they could comment during the "official" comment period as individuals. Some of the regional advisory councils expressed concern that they would not be able to comment on the proposed rule as a body. Other councils had no discussion on the proposed rule and simply moved to another agenda item after the briefing on the proposed rule.

On April 15, 2004, the Secretaries published a proposed rule to amend the regional council membership provisions of 36 C.F.R. § 242.11(b) and 50 C.F.R. § 100.11(b).[16] See 69 Fed. Reg. 19,964-68. They explained that the purpose of the proposed rule:

> while complying with the District Court's order, is to ensure continued compliance with both the fairly balanced representational

---

[15] Administrative Record for Final Rule, Vol. 1, Tab 2, at 77.

[16] The Secretary of the Interior's subsistence management regulations are codified at Title 50 of the Code of Federal Regulations, Part 100. The Secretary of Agriculture's subsistence management regulations are codified at Title 36 of the Code of Federal Regulations, Part 242. This order will cite only the verison of the regulations found in Title 50.

> requirements of FACA and the requirements and purposes of Title VIII of ANILCA in the appointments to the Regional Councils. In the proposed change, the Secretaries recognize that some persons with interests other than subsistence uses are entitled under FACA to be represented on the Regional Councils, while recognizing that Congress intended in Title VIII for rural Alaska residents "who have personal knowledge of local conditions and requirements ... to have a meaningful role in the management of fish and wildlife and of subsistence uses on public lands in Alaska," and that Congress also intended that "large urban population centers" not be allowed to dominate the Regional Council system. The 70/30 representational goals of the proposed change to § ----.11(b) would assure the appropriate representation and meaningful majority role for rural Alaska residents, while providing an appropriate representation for the interests of nonrural residents and nonsubsistence users.

Id. at 19,966.

Comments on the proposed rule were due on June 1, 2004. The FSB received oral comments during a public meeting held in Anchorage, Alaska, on May 19, 2004. Written comments were also received.

The final rule was published on October 14, 2004, and became effective on November 15, 2004. The final rule reads:

> The Secretaries, based on Board recommendation, will establish the number of members for each Regional Council. To ensure that each Council represents a diversity of interests, the Board will strive to ensure that 70 percent of the members represent subsistence interests within a region and 30 percent of the members represent commercial and sport interests within a region. The portion of membership that represents the commercial and sport interests shall include, where possible, at least one representative from the sport community and one representative from the commercial community.

> A Regional Council member must be a resident of the region in which he or she is appointed and must be knowledgeable about the region and subsistence uses of the public lands therein. The Board will accept nominations and make recommendations to the Secretaries for membership on the Regional Councils. In making their recommendations, the Board will identify the interest(s) the applicants propose to represent on the respective Regional Councils. The Secretary of the Interior with the concurrence of the Secretary of Agriculture will make the appointments to the Regional Councils.

50 C.F.R. § 100.11(b)(1).

On March 9, 2005, intervenors were granted leave to amend their cross-claim to challenge the final rule.[17] In doing so, the court advised plaintiffs that they might respond to intervenors' amended cross-claim. Intervenors' amended answer and cross-claim was filed,[18] and plaintiffs did respond.[19]

Intervenors raise four claims in their amended pleading. In their first claim for relief they allege that the final rule violates ANILCA because "the Final Rule formalizes and implements the 70/30 allocation of RAC seats[.]"[20] In their second claim for relief, intervenors allege that the final rule violates FACA because FACA does not authorize or require that an agency allocate a specific number of seats to representatives of special interest

---

[17] Clerk's Docket No. 244.

[18] Clerk's Docket No. 245.

[19] Clerk's Docket No. 247. Defendants also filed an answer to intervenors' amended cross-claim. See Clerk's Docket No. 246.

[20] Intervenors' Amended Answer and Cross-Claims at 15, ¶ 41(c), Clerk's Docket No. 245.

groups and because the final rule does not further the functions to be performed by the regional councils as set forth in section 3115(a) of Title VIII of ANILCA.[21] In their third claim for relief, intervenors allege that the final rule violates the APA because it is "arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, short of statutory right, and without observance of procedure required by law[.]"[22] In their fourth claim for relief, intervenors allege that the final rule is inconsistent with the court's January 16, 2004, order because the final rule did not "result in a RAC membership regulation consistent with the FACA."[23]

Intervenors seek a declaration that "Defendants' designation of specific seats on the RACs to represent non-subsistence interests is in violation of section [3115] of ANILCA, FACA, and the APA, and is therefore void and of no legal effect."[24] Intervenors also seek to enjoin defendants "from designating specific seats on the RACs for special interest groups," and to require "Defendants to abide by the standards of administrative procedure prescribed by ANILCA and the APA[.]"[25] Lastly,

---

21 Id. at 16, ¶ 43.

22 Id. at 17, ¶ 46.

23 Id. at 18, ¶ 47.

24 Id. at 19.

25 Id.

intervenors request that the court declare the final rule invalid and enjoin its enforcement and implementation.[26]

Intervenors' motion for summary judgment is now before the court. Intervenors do not advance separate arguments for each of their claims. Instead, they raise four arguments that are apparently directed at all of their claims. Intervenors' four arguments are: (1) that defendants' action is not reasonably based in the law and constitutes an abuse of discretion; (2) that defendants failed to comply with the statutory mandate to put the proposed rule to the regional advisory councils for their review and recommendation as directed by section 3115 of ANILCA; (3) that defendants' decision to adopt a quota system of single-interest representation is arbitrary and capricious; and (4) that defendants' interpretation of FACA is not entitled to the deferential review prescribed by the Supreme Court in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Intervenors' second and fourth arguments can be dealt with quickly and they will be addressed first. The focus of the discussion here will be on arguments one and three, namely whether the adoption of the final rule was arbitrary, capricious, or an abuse of discretion.

Discussion

Intervenors' claims arise under the APA. 5 U.S.C. §§ 701-06. The scope of the court's review of agency action is

---

[26] Id.

Case 3:98-cv-00414-HRH Document 299 Filed 08/02/2006 Page 11 of 36

determined by section 706(a) of the APA, which provides, in pertinent part, that the court shall:

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be —
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law; [or]
>
> (E) unsupported by substantial evidence....

5 U.S.C. § 706.

Argument Four — Deference

Intervenors argue that defendants' interpretation of FACA is not entitled to Chevron deference. In the January 16, 2004, order, the court noted that deference is usually afforded the Secretary of the Interior for ANILCA interpretations, but that no deference was to be afforded to the Secretaries for their interpretation of FACA, as they do not administer FACA.[27]

Defendants' briefing on the instant motion does not suggest any reason for the court to revisit this issue. Plaintiffs, however, argue that defendants' decision to impose the 70/30 structure in order to comply with FACA is entitled to "highly

---

[27] Order re Motions for Summary Judgment at 29, Clerk's Docket No. 208.

Case 3:98-cv-00414-HRH Document 249 Filed 08/02/2006 Page 12 of 36

deferential review." To support this argument, plaintiffs cite Cargill, Inc. v. United States, 173 F.3d 323 (5th Cir. 1999). There, in a footnote, the court observed that "[w]hile the functional balance and adequate staffing requirements are justiciable, they are subject to highly deferential review." Id. at 335-36 n.24.

This authority, coupled with the very special purpose of FACA and the very subjective, agency-specific nature of the fairly balanced membership requirement of FACA, causes the court to entertain some doubt about its earlier ruling on this subject. The decisions of the Secretaries about FACA compliance may be entitled to deference even if Chevron deference does not apply. This issue will be held open for further consideration if necessary. For now, the resolution of another issue is dispositive of intervenors' motion for summary judgment.

Argument Two — Regional Council Submission

Intervenors contend that defendants violated section 3115 of ANILCA by failing to put the proposed rule before the existing regional advisory councils for their review and recommendation. Section 3115 provides in pertinent part:

> Each regional advisory council shall be composed of residents of the region and shall have the following authority:
>
> (A) the review and evaluation of proposals for regulations, policies, management plans, and other matters relating to subsistence uses of fish and wildlife within the region[.]

16 U.S.C. § 3115(a). Intervenors argue that because section 3115 provides that regional advisory councils shall have the foregoing

authority, defendants were required to put the proposed rule before the councils for their review and recommendation. Intervenors contend that rules concerning the advisory council composition necessarily encompass matters concerning the taking of fish and wildlife on the public lands within their respective regions for subsistence use, and thus the Secretaries were required to put the proposed rule before the regional advisory councils for comment.

When this issue was raised during the comment period for the proposed rule, the Secretaries responded as follows:

> Section [3115(c)] requires the Secretaries to consider and give deference to Regional Advisory Councils' recommendations relative to the taking of fish and wildlife on public lands. The proposed membership balance rule is not a policy or regulation addressing the taking of fish and wildlife on public lands; and therefore, is not subject to the requirements of Section [3115(c)].

69 Fed. Reg. 60,957, 60,959. Here, defendants argue that the Secretaries correctly concluded that section 3115 did not require them to put the proposed rule to the regional advisory councils. Defendants again rely upon a portion of subsection 3115(c) that sets forth the Secretaries' responsibility as to council recommendations. Subsection (c) provides:

> The Secretary, in performing his monitoring responsibility pursuant to section 3116 of this title and in the exercise of his closure and other administrative authority over the public lands, shall consider the report and recommendations of the regional advisory councils concerning the taking of fish and wildlife on the public lands within their respective regions for subsistence uses.

16 U.S.C. § 3115(c).

The court concludes that the regulation at issue did not concern the "taking of fish and wildlife on public lands". Therefore, section 3115 did not require the Secretaries to submit the proposed rule as to regional council membership to the councils for their review prior to adopting the final rule.

Intervenors also contend that the Secretaries were required by regulation, 50 C.F.R. § 100.11(c)(1)(xii), to put the proposed rule before the regional advisory councils for comment. Section 100.11(c)(1)(xii) provides that regional advisory councils are authorized to "[p]rovide recommendations on the establishment and membership of Federal Advisory Committees."

Intervenors' reliance on 50 C.F.R. § 100.11(c)(1)(xii) is misplaced. The "Federal Advisory Committees" referred to in the regulation are those committees described in section 100.12. See 50 C.F.R. § 100.4. Section 100.12 describes the creation of:

> local Federal Advisory Committees within each region as necessary at such time that it is determined, after notice and hearing and consultation with the State, that the existing State fish and game advisory committees do not adequately provide advice to, and assist, the particular Regional Council....

50 C.F.R. § 100.12(a). In other words, the "federal local advisory committees" referred to in the regulation are not the regional advisory councils, but local committees that may be established in a region to advise and assist the regional council. Section 100.11(c)(1)(xii) does give the RACs the authority to make recommendations on federal advisory committee membership in addition to matters relating to the taking of fish and wildlife on

public lands; but it does not require the Secretaries to submit a question of policy, such as regional advisory council membership, to the councils prior to adoption of a regulation.[28]

Arguments One and Three – Arbitrary, Capricious, Abuse of Discretion

1. Final Rule is not reasonably based on Title VIII of ANILCA.

Intervenors first argue that defendants' adoption of the 70/30 rule was an abuse of discretion because a quota system of single-interest representatives is contrary to the purpose and intent of ANILCA to protect subsistence uses on public lands. Intervenors, defendants, and plaintiffs argue the subject at length. A full recitation and analysis of those arguments is at this time inappropriate for reasons explained below.

In adopting Title VIII of ANILCA, Congress gave the Secretaries little guidance as to how they should choose or designate members of the regional advisory councils. Section 3115(a) simply provides: "[e]ach regional advisory council shall be composed of residents of the region[.]" The only other insight regarding membership of the councils is contained in the congressional findings and declarations that introduce Title VIII. There, we read:

> (5) the national interest in the proper regulation, protection, and conservation of fish and wildlife on public lands in Alaska and the continuation of the opportunity for a

---

[28] Of course, the record reflects that the Secretaries in fact advised the regional advisory councils of the proposed rule and the councils had an opportunity (which many took advantage of) to comment on the membership question.

> subsistence way of life by residents of rural Alaska require that an administrative structure be established for the purpose of enabling rural residents who have personal knowledge of local conditions and requirements to have a meaningful role in the management of fish and wildlife and of subsistence uses on the public lands in Alaska.

16 U.S.C. § 3111.

From the latter declaration, one can glean the following insights regarding the regional advisory councils.

(1) The focus of Title VIII is not just the opportunity for perpetuation of a subsistence lifestyle. There is the coequal interest in the protection and conservation of fish and wildlife on public lands.

(2) The administrative structure contemplated by Congress is to afford "rural residents" — not just subsistence users — a meaningful role in the management of fish and wildlife.

The above-quoted declaration was surely intended to give the Secretaries important insight into the role of regional advisory council members, which in turn gives guidance as regards membership qualifications. While Congress did not mandate single-interest members of regional advisory councils, it did not exclude such an approach. There is, however, a fair inference that rural residents who are not subsistence users of fish and wildlife should be included. The question of whether the proposed 70/30 rule (or

any other membership rule) fits into and is compatible with the above-quoted statutory provisions as regards the membership of regional advisory councils is patently an important one. For now, the court concludes only that a single-interest quota system of regional advisory council membership is neither required nor excluded by Title VIII of ANILCA.[29]

2. Final Rule is not reasonably based on FACA

Intervenors next argue that defendants' adoption of the final rule was an abuse of discretion because it is not reasonably based on FACA. FACA requires advisory committees to have memberships that are "fairly balanced in terms of the points of view represented and the functions to be performed[.]" 5 U.S.C. app. 2 § 5(b)(2). Appendix A to the regulations provides further elaboration on the "fairly balanced" requirement:

> The composition of an advisory committee's membership will depend upon several factors, including: (I) The advisory committee's mission; (ii) The geographic, ethnic, social, economic, or scientific impact of the advisory committee's recommendations; (iii) The types of specific perspectives required, for example, such as those of consumers, technical experts, the public-at-large, academia, business, or other sectors; (iv) The need to obtain divergent points of view on the issues

[29] Defendants aptly point out that the final rule does not establish a strict 70/30 quota system. The final rule "establishes representational goals" and "the actual appointments are dependent on the receipt of applications and nominations of highly qualified individuals." 60 Fed. Reg. 60,957, 60,959 (Oct. 14, 2004). There is nothing in the final rule that actually requires that membership on the councils must always be 70/30. By notice filed March 15, 2006, intervenors show that the Southcentral RAC had five commercial/sport designated members and six subsistence members as of March 2006. Clerk's Docket No. 267.

Case 3:98-cv-00414-HRH Document 294 Filed 08/02/2006 Page 18 of 36

> before the advisory committee; and (v) The relevance of State, local, or tribal governments to the development of the advisory committee's recommendations.

41 C.F.R. pt. 102-3, subpt. B, app. A (2005).

"In considering whether a committee is fairly balanced in terms of function, courts naturally have looked first at the functions to be performed." Cargill, 173 F.3d at 336. "This does not mean, however, that 'Congress intended the "fairly balanced" requirement to entitle every interested party or group affected to representation on the Commission.'" Public Citizen v. National Advisory Comm. on Microbiological Criteria for Foods, 886 F.2d 419, 423 (D.C. Cir. 1989) (quoting National Treasury Employees Union v. Reagan, 1988 WL 21700, at *3 (D.D.C. Feb. 25, 1988) (Civ A. No. 88-186)) (emphasis in original)).

The functions of the regional advisory councils are particularized in section 3115 of ANILCA. The regional advisory councils are:

> (1) to review and evaluate proposals for regulations, policies, and management plans relating to subsistence uses of fish and wildlife;
>
> (2) to provide a forum for the expression of opinions and recommendations by persons interested in matters relating to the subsistence uses of fish and wildlife;

Case 3:98-cv-00414-HRH Document 329-3 Filed 08/23/2006 Page 19 of 36

> (3) to encourage local and regional participation in the decision-making process; and
>
> (4) to prepare an annual report for the Secretary, which includes a recommendation for a strategy for the management of fish and wildlife populations within the region to accommodate subsistence uses.

16 U.S.C. § 3115(a). These functions are to be carried out in light of the statutory policy of ANILCA, which is,

> consistent with sound management principles, and the conservation of healthy populations of fish and wildlife, the utilization of the public lands in Alaska is to cause the least adverse impact possible on rural residents who depend upon subsistence uses of the resources of such lands; consistent with management of fish and wildlife in accordance with recognized scientific principles and the purposes for each unit established, designated, or expanded by or pursuant to titles II through VII of this Act, the purpose of this subchapter is to provide the opportunity for rural residents engaged in a subsistence way of life to do so....

16 U.S.C. § 3112(1).

Intervenors argue that defendants' decision to adopt a quota system of single-interest representation is not reasonably based on FACA (and thus an abuse of discretion) because the "fairly balanced" provision of FACA does not require single-interest representation. Intervenors are correct; FACA has no such requirement. But by the same token, nothing in FACA expressly

excludes single-interest representation on regional advisory councils.

Intervenors contend that the specified function of the regional advisory councils is to provide specialized knowledge about subsistence. Here, intervenors' focus is too limited. Sections 3111(5) and 3115(a)(D), in the light of section 3112(1), require that councils take a broader view of wildlife management than just subsistence concerns. Regional advisory councils must be informed about the overall, sound management of wildlife on public lands, even though the councils do not have any defined duties with respect to sport or commercial use of wildlife. Sound management of wildlife based upon scientific principles necessarily means that regional advisory councils must take account of sport and commercial uses of fish and wildlife.

Intervenors also contend that FACA does not require a potential committee member to make an arbitrary declaration of intent to represent a single interest. This is true, but FACA does not exclude such a procedure. Intervenors insist that Congress, in enacting FACA, was attempting to ensure that special interest groups did not dominate federal advisory committees. See, e.g., H.R. Rep. No. 92-1017 at 6 (1972), reprinted in 1972 U.S.C.C.A.N. 3491, 3496 ("One of the great dangers in the unregulated use of advisory committees is that special interest groups may use their membership on such bodies to promote their private concerns."). In addition, intervenors point out that FACA provides that:

> Any such legislation [establishing an advisory committee] shall —

....

> (3) contain appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by a special interest, but will instead be the result of the advisory committee's independent judgment[.]

5 U.S.C. app. 2 § 5(b)(3). Intervenors argue that FACA's requirement that committees exercise judgment free from improper influence is contrary to defendants' attempt to create a "fair balance" of views on the regional advisory councils by establishing a mandatory quota for members who would represent a single-interest group. Intervenors contend that single-interest representation results in regional advisory councils that promote private concerns and that is contrary to FACA's intent. Intervenors also contend that defendants are arbitrarily discriminating against non-consumptive users, such as hikers and bird-watchers, by not including them in regional advisory council membership because they too may be affected by council recommendations.

Although FACA does not require that all possible interest groups be represented on advisory committees, the court has already held that a fairly balanced regional council must include consumptive users of fish and wildlife on public lands other than subsistence users because those users are directly affected by the subsistence priority. The 70/30 balance and single-interest representation is what the Secretaries determined would provide a fair cross-section of interests and balanced membership. See 69 Fed. Reg. 60,957, 60,960 (response to comment as to why not an

80/20 balance). Whether that decision is adequately supported by the administrative record remains to be decided.

However, as a general proposition, the court concludes that single-interest representation would not as a matter of law conflict with any requirement of FACA. The 70/30, single-interest representation structure is one way, but not the only way, to approach the fair balance required by FACA. Intervenors make the point over and over again that defendants have created a single-interest representation system and that such a system is wrong. But in making this point, intervenors overlook the fact that if the RACs were to have only subsistence users as members, which is what intervenors seek, then the regional advisory councils appear to be single-interest bodies. For the reasons set out above, the functions of the regional advisory councils are not so limited that only subsistence users should be members.

3. Final Rule is arbitrary and capricious

Lastly, intervenors argue that the final rule is arbitrary and capricious. Agency action violates this standard if:

> "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Ranchers Cattlemen Action Legal Fund United Stockgrowers of Amer. v. United States Dep't of Agriculture, 415 F.3d 1078, 1093 (9th Cir. 2005) (quoting City of Sausalito v. O'Neill, 386 F.3d 1186,

1206 (9th Cir. 2004)). "Regulations are presumed to be valid[.]" Id. "All that is required is that the agency have 'considered the relevant factors and articulated a rational connection between the facts found and the choices made.'" Id. (quoting Nat'l Ass'n of Home Builders v. Norton, 340 F.3d 835, 841 (9th Cir. 2003)). "The court is not empowered to substitute its judgment for that of the agency." Arizona Cattle Growers' Ass'n v. United States Fish & Wildlife, 273 F.3d 1229, 1236 (9th Cir. 2001). The court "must conduct a 'thorough, probing, in-depth' inquiry into the validity of regulations." Ranchers, 415 F.3d at 1093 (quoting Nat'l Ass'n of Home Builders, 340 F.3d at 841). The court's "inquiry must be 'searching and careful' to ensure that the agency decision does not contain a clear error of judgment." Id. (quoting City of Sausalito, 386 F.3d at 1206). "In performing this inquiry, the court is not allowed to uphold a regulation on grounds other than those relied on by the agency." Id. The court's review is generally confined to "'the administrative record in existence at the time of the decision[.]'" The Lands Council v. Powell, 395 F.3d 1019, 1029 (9th Cir. 2005) (quoting Southwest Ctr. for Biological Diversity v. United States Forest Serv., 100 F.3d 1443, 1450 (9th Cir. 1996)).

Defendants certified the administrative record for the final rule as consisting of ten three-ring binders filed with the court on May 13, 2005.[30] Defendants expressly state that the administrative record for the original 70/30 policy that was

---

[30] See Clerk's Docket No. 251.

previously filed "is not part of the administrative record for the Final Rule now at issue."[31] While the court supposes that defendants had good reasons for limiting the record they certified to the court to those proceedings subsequent to the FSB's decision not to appeal the court's January 2004 ruling,[32] the court has had concerns about the temporal shortness of the record. The court has wondered whether some or perhaps even all of the rationale for the 70/30 structure was contained in the record of the earlier proceedings. For the present, the court must restrict itself to the record that has been certified and the arguments that have been made on that record.

In this instance, the record that has been certified concerning the 70/30 rule is totally inadequate to explain and/or justify the regulatory choices made by the Secretaries in adopting the 70/30 rule. Nowhere in the record do defendants explain their rationale for choosing the 70/30 structure as the means for achieving FACA compliance. The court concedes that defendants have responded to public comments that were received on the proposed rule, but defendants had an obligation to do more than that. They had an obligation to articulate the rationale for their regulatory choice. The rejection or explanations offered with respect to comments do not afford the court an understanding of why defendants chose the 70/30 rule. The foregoing is the court's

---

[31] Defendants' Opposition to Intervenors' Memorandum on Amended Cross-Claim at 10-11, n.8, Clerk's Docket No. 263.

[32] Clerk's Docket No. 208.

principal holding here. Hereinafter, we deal at some length with the specific arguments made by the parties. The court emphasizes this point, because on motions for reconsideration, the parties seem to have focused upon details while overlooking the court's above conclusion that it has not been provided with an administrative record that discloses a rational connection between the facts of the rule-making disagreement and the choice made by defendants.

a. Defendants failed to engage in a considered analysis of what constitutes a fairly balanced regional advisory council

Intervenors first argue that defendants' conduct was arbitrary and capricious because defendants failed to consider a cross-section of those directly affected, interested, and qualified as appropriate to the nature and functions of the advisory committees. Intervenors cite a FACA regulation governing the establishment, renewal, or reestablishment of a discretionary advisory committee that provides that the agency must articulate how the advisory committee will achieve a fair balance:

> The plan will ensure that, in the selection of members for the advisory committee, the agency will consider a cross-section of those directly affected, interested, and qualified, as appropriate to the nature and functions of the advisory committee. Advisory committees requiring technical expertise should include persons with demonstrated professional or personal qualifications and experience relevant to the functions and tasks to be performed.

41 C.F.R. § 102-3.60(b)(3). Based on this regulation, intervenors argue that defendants, in order to have engaged in a considered

analysis of what constitutes a fair balance, should have begun with an examination of the functions to be performed by the regional advisory councils and then proceeded to consider a cross-section of those directly affected, interested, and qualified, as appropriate to the nature and function of the councils. Because the administrative record is devoid of any evidence that defendants took these necessary steps, intervenors argue that defendants' adoption of the final rule was arbitrary and capricious.

The FACA regulation cited by intervenors has no application here. That regulation applies to the establishment of discretionary advisory councils. A discretionary advisory council is (1) a council that is authorized by Congress but the President or the agency is not directed to establish the council, or (2) a council that is established by an agency under general authority in Title 5 of the United States Code or under other general agency-authorizing statutes. 41 C.F.R. § 102.3.50(c)-(d). Here, the regional advisory councils are authorized by Congress and the Secretaries are directed to establish the regional advisory councils, which makes them non-discretionary advisory councils. See id. at § 102.3.50(a).

b. Defendants failed to consider whether a fair balance of views could be achieved by alternatives to a quota system of single-interest representation

Intervenors contend that defendants' adoption of the final rule was arbitrary and capricious because defendants failed to consider any alternatives to the 70/30, single-interest representation structure. "Agency actions cannot be sustained

Case 3:98-cv-00414-HRH Document 299 Filed 08/02/2006 Page 27 of 36

where the agency has failed to consider significant alternatives." Mt. Diablo Hospital v. Shalala, 3 F.3d 1226, 1232 (9th Cir. 1993). Intervenors argue that the record in this case is completely devoid of any evidence that defendants considered whether a fair balance could be achieved by some alternative other than the 70/30, single-interest representation structure.

Although defendants entitle a two-page section of their brief "Consideration of Alternatives,"[33] nowhere in these two pages do defendants outline what alternatives they considered. Perhaps this is because defendants do not believe that they were required to consider significant alternatives. In the course of their arguments on motion for reconsideration, defendants discuss the rule-making process as outlined in 5 U.S.C. § 553. Defendants point out that nowhere does Section 553 say that the agency must consider significant alternatives. Indeed, there is no such statutory requirement. Nevertheless, the rule-making process may be flawed because the agency has failed to consider relevant factors and to articulate a rational connection between facts found and choices made.

Having reviewed the administrative record that has been certified to the court and upon which the final rule depends for validity, the court can find no evidence to suggest that defendants considered any means for achieving fairly balanced, regional advisory councils other than the 70/30, single-interest

[33] Defendants' Opposition to Intervenors' Memorandum on Amended Cross-Claim at 26, Clerk's Docket No. 263.

representation structure. Given the history of the regional advisory council make-up, and the long history of antagonism between competing groups, defendants should have at least considered ways to get the necessary balance without going to a scheme that brings the confrontation between subsistence users and commercial users into such stark focus. In short, the certified administrative record fails to demonstrate that defendants gave meaningful consideration to alternatives to the 70/30 structure.

As conceded above, defendants did respond to public comments, and some of those comments did suggest alternatives to the 70/30 structure. For example, the Eastern Interior RAC suggested that RAC "applicants be able to provide a percentage breakdown of their activity and type of user group" and that the membership composition "be achieved by combining the percentages of each Council applicant rating."[34] In the "Comment and Response" section of the final rule, defendants acknowledged that this alternative had been suggested and gave the following response:

> We recognize that there are and have been individuals serving on the Councils who may participate in many types of uses (subsistence, sport and commercial) and are knowledgeable about the different interests. However, we are required by FACA to demonstrate that the Regional Advisory Councils continue to be fairly balanced in terms of points of view represented and the functions to be performed by the Council. Consequently, we have requested that people applying for Council seats declare their primary interest because it is the individual

---

[34] Administrative Record for Final Rule, Vol. 3, Tab 21, at 3031-32.

                    > applicant who is the most knowledgeable about his/her viewpoints.

69 Fed. Reg. 60957, 60960.

The first sentence of that response tacitly recognizes another way in which compliance with FACA could be established — namely, having council members who are knowledgeable of subsistence as well as sport and commercial uses of wildlife. That response simply causes the court to reiterate that the record fails to disclose why that alternative was rejected. The second sentence of the response merely states FACA law. The third sentence of the comment is a statement in other words of the rule that was adopted. It is no explanation for why that rule has been adopted.

Finally, on the motions for reconsideration, plaintiffs express concern that the court's reference to the acrimonious history of the regulation of subsistence hunting and fishing by federal authorities was intended to suggest to the FSB and defendants a particular alternative. The court certainly did <u>not</u> direct defendants to select or even to consider any particular alternative. The court recognizes that the FSB and those who advise it are far more knowledgeable than the court regarding the administration of Title VIII of ANILCA. The court would not presume to suggest a result or the consideration of a particular alternative to defendants, even though the court is of the view that there are several very obvious alternatives that might have been considered. As already stated, the court's primary concern is that defendants appear not to have employed the vast experience they do have to consider something other than a 70/30, single-

interest form of council membership. It may be impossible to completely satisfy all of the interests involved here; but if ever there were a situation that called for "thinking outside the box," surely this is it. The differences between subsistence users, commercial users, and sport users of limited wildlife resources call for imaginative thinking. But what shall be done to effect FACA compliance is for defendants to consider, decide, and justify.

c. Defendants' action is not supported by findings in the record

Intervenors contend that defendants failed to support the changes to the regional advisory council membership structure with substantial evidence or specific findings in the record. Review of the final rule in this instance is not governed by the substantial evidence standard. The substantial evidence standard applies "in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E). Sections 556 and 557 apply when an evidentiary hearing is held. There was no evidentiary hearing held in connection with the rule-making at issue here.

d. Defendants improperly modeled the 70/30 quota system on the defunct Stevens Amendment

"Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider...." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1984). Intervenors argue that it was improper for defendants to

consider the Stevens Amendments[35] because Congress understood that changes to the regional advisory council structure could be made only through legislation. Intervenors contend that the final rule essentially implements the repealed amendments and, in doing so, defeats Congress' intent that changes to the regional advisory councils would take place only if the State of Alaska came back into conformity with Title VIII of ANILCA.

In its June 12, 2006, order, the court stated that:

> Nowhere in the administrative record that has been certified to the court are the Stevens Amendments mentioned.[36]

On motion for reconsideration, plaintiffs correctly point out that the foregoing statement is wrong. In fact, intervenors mentioned

---

[35] The Stevens Amendments were adopted by Congress in 1997. Under the Stevens Amendments, each regional advisory council was to be composed of ten members, four of whom would be selected from nominees submitted by tribal councils in the region and six of whom would be selected from nominees submitted by local governments and local advisory councils. See Department of the Interior and Related Agencies Appropriations Act, Pub. L. No. 105-83, 111 Stat. 1543 (1997). Of the six council members selected from nominees submitted by local governments and local advisory councils, three were to be subsistence users residing in the area and three were to be sport or commercial users residing in the area. Id. The Stevens Amendments were contingent upon (1) the Alaska Legislature placing a constitutional amendment on the ballot that would allow the state legislature to provide a rural subsistence priority, (2) the enactment of a state subsistence law that provided for the definition, preference, and participation specified in sections 803, 804, and 805 of ANILCA, and (3) approval of the ANILCA "package" by the Alaska voters in November 1998. Because none of these events occurred, the Stevens Amendments lapsed.

[36] Order re Motion for Summary Judgment at 28, Clerk's Docket No. 269.

Case 3:98-cv-00414-HRH Document 249 Filed 01/02/2006 Page 32 of 36

the Stevens Amendments in their written comments to the proposed rule.[37]

The court's misstatement in the foregoing regard gets plaintiffs nowhere. The record that is before the court fails totally to demonstrate that defendants selected the 70/30 single interest form of council membership because of the Stevens Amendments. The Secretaries did not mention the Stevens Amendments when they set forth their reasons for rule-making. See 69 Fed. Reg. 60957-62. Because there is no evidence that the Secretaries relied on the Stevens Amendments, plaintiffs' and intervenors' arguments in this regard fail.

Moreover, there is no statutory basis for intervenors' argument that congressional legislation is necessary to effect a change in the structure of the regional advisory councils. Expiration of the Stevens Amendments left Title VIII as it was, with the Secretaries having regulatory authority to implement 16 U.S.C. § 3115; and even if the Secretaries had considered the Stevens Amendments, it would not have been improper for them to have done so. As the court has already observed, a single-interest, 70/30 rule (which was the essence of the Stevens Amendments) is one possible approach to FACA compliance.

---

[37] See Administrative Record for Final Rule, Vol. 5, Tab 36, at 4983-85.

e. Targeting sport and commercial users over other non-consumptive users was arbitrary and capricious

Finally, intervenors argue that it was arbitrary and capricious to include only sport and commercial users while excluding all other consumptive users and non-consumptive users. The court has already rejected the argument that only subsistence users of resources are appropriate regional advisory council members. As to the broader argument that others are inappropriately excluded, FACA does not require that every point of view be represented on an advisory committee in order for the committee to be fairly balanced. Because the final rule must be reconsidered by the Secretaries, intervenors are free to argue, and the Secretaries should consider, other alternatives.

Remedy

In the conclusion of the June 12, 2006, order,[38] the court directed the clerk to enter judgment in favor of intervenors and against defendants, holding the final 70/30 rule void, enjoining defendants from further implementation of the 70/30 rule, and requiring further rule-making proceedings. On motion for reconsideration, plaintiffs argue that such remedy is manifestly unjust because defendants are halfway through the annual RAC member selection process. Defendants argue that employing the previous regulatory selection process will put defendants in violation of FACA because, without the 70/30 rule, the new RAC members would

[38] Order re Motion for Summary Judgment at 29, Clerk's Docket No. 269.

have been selected in a fashion not aimed at achieving a fair balance of views on the councils. Based upon Paulsen v. Daniels, 413 F.3d 999, 1008 (9th Cir. 2005), plaintiffs and defendants argue that equity may sometimes require that an invalid rule stay in place while the rule-making process is reexamined by defendants.

On reconsideration, and in consideration of defendants' motion to amend judgment, the court concludes that defendants' concerns are well-founded. If the 70/30 rule is voided, and defendants enjoined from further implementing it, RAC members will have to be selected pursuant to 36 C.F.R. § 242.11(b) and 50 C.F.R. § 100.11(b) as they existed before adoption of the final rule. Those regulations did not meet FACA requirements. In its order of January 16, 2004, the court held that:

> In light of the national policies of ANILCA and the functions served by regional advisory councils, a council comprised of only subsistence users is not fairly balanced.[39]

Thus, the court's June 12, 2006, order and its judgment thereon place defendants between a rock and a hard place.

The court has not concluded that the 70/30 rule for RAC membership is contrary to law. The court's holding is that defendants have not submitted to the court an administrative record that provides a rationale for that rule. The court concludes that it would be manifestly unjust to require defendants to remain in violation of FACA rather than continuing the RAC member selection process under the 70/30 rule. Again, the 70/30 rule is not

---

[39] Order re Motions for Summary Judgment at 57, Clerk's Docket No. 208.

Case 3:98-cv-00414-HRH Document 299 Filed 08/02/2006 Page 35 of 36

contrary to law; it simply has not been adequately justified at this point.

Conclusion

Intervenors' motion for summary judgment on their amended cross-claim is granted. Although not void as a matter of law, the final rule adopted by the defendants for selection of RAC members in compliance with FACA is arbitrary and capricious because the record underlying the adoption of that rule fails to provide a rationale for the adoption of the rule. To the extent not granted by the terms of this order, intervenors' motion is denied.

The clerk of court shall enter an amended judgment in favor of intervenors and against defendants as follows:

> The court declares that the final rule that imposed a 70/30 membership structure for the regional advisory councils is arbitrary and capricious for lack of an administrative record providing the rationale for the adoption of that final rule. However, defendants may employ the 70/30 rule for the 2006 year vacancies. As to vacancies occurring after calendar year 2006, defendants and all others acting in concert with them are enjoined and restrained from further implementation of the 70/30 final rule and regional advisory council charter provisions based thereon.

Case 3:98-cv-00414-HRH Document 299 Filed 08/07/2006 Page 36 of 36

Defendants shall promptly undertake further administrative proceedings consistent with the court's amended order on motion for summary judgment dated August 7, 2006.

The court retains jurisdiction over the amended complaint in intervention. Proceedings in this case are stayed pending further administrative proceedings by defendants as prescribed by this judgment. At any time and for any appropriate reason — including the court's prohibition of the implementation of the 70/30 rule for regional advisory council membership selection after 2006 — any party may petition to have these proceedings reopened.

DATED at Anchorage, Alaska, this 7th day of August, 2006.

/s/ H. Russel Holland
United States District Judge